JOSEPH WARNER, APPELLANT, V. EPHRAIM SOHN ET AL.,
APPELLEES.*

FILED APRIL 9, 1910.   No. 15,851.

1. Crops planted by an intruder, so long as they remain unsevered,
   are regarded as the property of the owner of the land.

2. Agency cannot be proved by mere acts or declarations of an al-
   leged agent not brought home to the principal.

3. Principal and Agent: PROOF OF AGENCY. In proving the authority
   of an agent for the purpose of binding the principal by the
   former's transaction, there must be evidence of the agency at
   that time.

4. ———: ———: PRESUMPTION OF CONTINUANCE OF AGENCY. The
   presumption that the relation of principal and agent con-
   tinues, when once established, may be overcome by proof that
   the alleged agent had no authority as such.

5. Replevin: DIRECTING VERDICT. In replevin it is not error to direct
   a verdict for defendant, where the evidence is insufficient to sus-
   tain a judgment in favor of plaintiff.

APPEAL from the district court for Furnas county:
ROBERT C. ORR, JUDGE. *Affirmed.*

*Perry & Lambe,* for appellant.

*Morlan, Ritchie & Wolff,* contra.

ROSE, J.

Plaintiff replevied from defendants three stacks of rye.
The answer to his petition consisted of a general denial
and a prayer for judgment for a return of the property,
or for its value, if a return could not be had, and for dam-
ages for wrongful detention. At the trial below witnesses
testified on both sides of the case. In obedience to a per-
emptory instruction at the close of the testimony, the jury
rendered a verdict in favor of defendants. The value of
the property was fixed at $45, and defendants' damage by

* See former opinion, 85 Neb. 571.

reason of the detention at $17.85. From a judgment on the verdict plaintiff appeals.

At a former session an order of affirmance was entered without deciding the main questions presented by the appeal. *Warner v. Sohn*, 85 Neb. 571. This regrettable action resulted from the writer's failure to observe an exception to the peremptory instruction of the trial court. When attention was directed to the oversight by a motion for a rehearing, the affirmance was promptly vacated and the appeal resubmitted on its merits. Plaintiff's statement of his case, with references to the record omitted, is as follows: "In the spring of 1901 Warner rented a tract of land near the village of Arapahoe, of the owner, William Hall, through his agent. The agreement between the plaintiff and the agent was that the former should give as rent for the use of the land one-third of the crop raised that season. In the fall of the same year the plaintiff again went to this agent to rent the land for another season, at which time the same agreement was again entered into, the defendants verbally agreeing to pay as rent one-third of the crop. Pursuant to this agreement the plaintiff seeded the tract to rye in the fall of 1901, and continued in exclusive, unobstructed and peaceable possession of the same until the latter part of June, 1902. On the 31st day of March, 1902, the defendants herein purchased this tract of land from the owner and moved into the buildings thereon. After the defendants moved upon the land the plaintiff testified that he made an oral agreement with the defendants for the division of the rye, after which agreement the defendants fenced off one-third of the rye and pastured the same. The plaintiff, when the two-thirds of rye not fenced became ripe, during the latter part of June, 1902, employed one Carter to harvest the same for him. This Carter did; but, when Warner entered the land to remove the rye, the defendants repudiated their former agreement and refused to permit the plaintiff to remove the grain already severed from the land, but forcibly seized the severed grain and retained

possession thereof after the plaintiff had demanded pos-
session of the same. This action in replevin was brought
to recover possession of that which the plaintiff contends
he lost through this unlawful action of the defendants.
On the trial in the district court the judge sustained a
motion by the defendants' attorney to direct a verdict for
the defendants, wholly disregarding all the testimony in
the case. The plaintiff contends that, when the defendants
moved on the land, the plaintiff went to the defendants
and informed them that he had the ground rented of the
prior owner for one-third of the crop of rye, and that the
parties herein then entered into an agreement for the
division of crop, ratifying the agreement with the former
owner, and thereupon the defendants Sohn fenced off one-
third the tract of rye as their agreed rent share, and used
the same for pasture. The question for consideration is
the correctness of the court's ruling, under these circum-
stances, in usurping the functions of the jury."

The questions presented are stated by plaintiff in his
brief as follows: "There were but two questions involved
in this case. These questions are not difficult to con-
jecture. The first is: Did the plaintiff have any right to
enter upon the land in question? And, second: Were the
stacks of rye in question the sole property of the plaintiff
so that he could maintain replevin therefor? In other
words, did the plaintiff make a *prima facie* case by his
own evidence of his right to the land and a division of the
rent?"

It thus appears by plaintiff's own statement of his case
that the first question presented is: "Did the plaintiff have
any right to enter upon the land?" In answering this in-
quiry, it is important to observe that plaintiff says William
Hall was owner of the land, and that through his agent
plaintiff had rented it in the spring of 1901, agreeing to
give the owner one-third of the crop *for that season*. That
season necessarily ended in the fall of 1901, because plain-
tiff further says: "In the fall of the same year the plain-
tiff *again* went to this agent to rent the land *for another*

season." The latter season included the period from the time of sowing the rye in the fall of 1901 until the crop was harvested in 1902. Plaintiff was not a tenant from year to year, therefore, but was a cropper for a single season. He took this position in the trial court, and assumed the burden of proving that he procured from Hall in the fall of 1901 authority to take possession of the rye-field for the purpose of cropping it during the ensuing season. Plaintiff did not live on the land in 1901, or at any subsequent time, and his right to enter thereon, so far as this suit is concerned, must be found in authority obtained in the fall of that year. There is no pretense that he procured from Hall directly either a written lease or an oral agreement. Consequently it was incumbent on plaintiff, in making a *prima facie* case, to prove that an agent having authority from Hall gave him permission in the fall of 1901 to crop the rye-field. Without such proof his case would be controlled by the doctrine that crops planted by an intruder, so long as they remain unsevered, are regarded as the property of the owner of the land. *Baker v. McInturff,* 49 Mo. App. 505; *Freeman v. McLennan,* 26 Kan. 151. Plaintiff undertook to supply the necessary proof by showing that W. S. Morlan, as agent for Hall, authorized I. H. Dempsey to look after the land, and that the latter permitted plaintiff to crop it. Plaintiff testified that he first sowed the land in 1901, raising a crop of millet in the spring of that year; that he knew who had been acting as agent for the land; that Dempsey had been acting in that capacity; that plaintiff went to Dempsey and asked him about the leasing of the land, and that the latter gave plaintiff the right to farm it on condition that the owner should have one-third of the crop; that, after the making of the arrangement described, plaintiff sowed the rye; that Dempsey "was acting as subagent for Mr. Morlan, that is, for Mr. Hall"; that plaintiff had written to Morlan about renting the land, and had been referred to Dempsey, but that the letter could not be produced; that in the fall of 1901 plaintiff again went

to Dempsey, told him he wanted to sow the rye, asked permission to crop the land for another year, and was told by Dempsey to go ahead and put in the crop.

On his direct examination this is the substance of that part of the testimony on the issue as to Dempsey's agency. It contains no proof whatever that in the fall of 1901 Dempsey, as the agent of Hall, had authority to give plaintiff permission to crop the land. If Dempsey's agency to lease Hall's land is shown by the proof summarized, the testimony on that subject related alone to the previous cropping season. It is true that plaintiff testified he was told by Dempsey in the fall of 1901 to go ahead and crop the land, but there is no proof he was then Hall's agent. Agency cannot be proved by mere acts or declarations of an alleged agent not brought home to the principal. *Blanke Tea & Coffee Co. v. Rees Printing Co.*, 70 Neb. 510; *Fitzgerald v. Kimball Bros. Co.*, 76 Neb. 236; *Norberg v. Plummer*, 58 Neb. 410; *Anheuser-Bush Brewing Ass'n v. Murray*, 47 Neb. 627; *Richardson & Boynton Co. v. School District*, 45 Neb. 777; *Burke v. Frye*, 44 Neb. 223. Plaintiff traced no leasing authority from Hall to Morlan or Dempsey, or from Morlan to Dempsey, in the fall of 1901. There is no proof that Morlan at that time had authority to make Dempsey the agent of Hall, or that the latter ever had knowledge of any act or declaration of Dempsey. On plaintiff's direct examination, therefore, there was no evidence adduced to show that Dempsey had authority in the fall of 1901 to lease the land to plaintiff. In proving authority of an agent for the purpose of binding the principal by the former's transaction, there must be evidence of the agency at that time. *Rowell v. Klein*, 44 Ind. 290.

On re-direct examination, however, plaintiff was asked how he came to inquire of Morlan about renting the land, and answered: "Well, I knew Mr. Morlan was the agent for the land." But he undertook to state the source of such knowledge, and in that way limited his testimony thereto. In doing so, he said that he had previously rented

the same property from and paid the rental to Morlan; that the contents of Morlan's letter was: "Mr. Dempsey is acting or is looking after the Hall property for me." In reference to this letter and to Dempsey's agency, plaintiff was asked: "Now, when you went to Dempsey, what, if anything, was said with reference to this letter, about his acting as agent?" This question was answered: "Mr. Dempsey said that he was looking after the Hall property for Mr. Morlan." The substance of the proof of Dempsey's agency has been stated in a light as favorable to plaintiff as the testimony will warrant. A critical examination of the bill of exceptions shows that Morlan's letter related to Dempsey's agency before plaintiff cropped the land in the spring of 1901. The existence of such an agency in the fall of that year was not proved. When plaintiff rested his case, he was not entitled to the benefit of the presumption that Dempsey's agency, even if established in the spring of 1901, was presumed to continue. This conclusion is deducible from the following propositions: There was no testimony that Dempsey was Hall's agent for any purpose in the fall of 1901. Any presumption of that fact was overcome by the direct and positive testimony of Dempsey himself that he had no authority at that time to lease Hall's land. The evidence is wholly insufficient to sustain a finding that plaintiff had a right either to enter upon the land for the purpose of sowing rye or to harvest the crop, and the trial court no doubt proceeded under the familiar rule that there is no error in directing a verdict for defendant, where the evidence is insufficient to sustain a judgment in favor of plaintiff. *Dehning v. Detroit Bridge & Iron Works,* 46 Neb. 556.

Defendants bought the Hall land and moved onto it in the spring of 1902, after plaintiff sowed the rye and before the crop was harvested, and it is insisted that in the meantime they ratified the lease and fenced off and pastured their share of the crop. On this issue plaintiff testified he saw defendants moving in, had a conversation with Sohn, and was informed they had purchased the place; that he

informed Sohn of his having rented the land; that there was not much said about it; and that plaintiff was to give one-third of the crop as rental. "After this conversation," inquired his counsel, "what, if any, steps did Mr. Sohn take to divide the crop off, if you know?" Plaintiff answered: "Why, he fenced off one part of the field." Plaintiff further stated in this connection that Sohn fenced off "about two acres, maybe two and a half acres"; that the amount thus fenced was about one-third of the field, which Sohn pastured; and that plaintiff first learned that defendants claimed the other two-thirds about the time of harvesting. On cross-examination, however, plaintiff stated that he had never made any arrangement with defendants about fencing the rye or in regard to the location of the fence. On this subject he was asked by counsel for defendants: "Then, from the time that Sohn first moved there, until you replevied the rye, you don't remember of having any talk with him about dividing the rye, or anything of that kind?" "No," replied plaintiff, "I just simply supposed by his fencing off that part of it that he meant to take that part of it as his rent." He said further that he never talked to Sohn about it, and never made any proposition about dividing it, as far as he remembered. This falls far short of proving a ratification of the lease or a division of the crop. On these issues the evidence would not sustain a verdict in favor of plaintiff, and there was no error in the peremptory instruction.

It is equally clear that plaintiff cannot recover under the rule that an intruder who sows and cultivates grain may be entitled to the crop, where he remains in possession until he harvests it. Plaintiff conceded, when testifying, that defendants fenced and pastured a portion of the rye when it was growing, forcibly ejected him, when he entered upon the land to harvest the crop, and gathered and stacked the sheaves. Having failed to show any right to enter upon the land in the fall of 1901, or to harvest the crop in the summer of 1902, there was no error in directing a verdict in favor of defendants. The con-

clusion reached on the first question presented eliminates the second, namely: "Were the stacks of rye in question the sole property of the plaintiff, so that he could maintain replevin therefor?"

AFFIRMED.

SEDGWICK, J., not having heard the argument, took no part in the decision.

REESE, C. J., dissenting.

I find it impossible for me to consent to, or join in, the opinion of the majority in this case, and will, very briefly, state my reasons. I think the decision is founded entirely upon a wrong basis. I do not think plaintiff can be justly denounced as an intruder, a trespasser, or an interloper. A fair statement of the evidence on the part of plaintiff would be that in the spring of 1901 he was given the use of the land to seed in millet for a rental of one-third of the crop. Later, and in the fall, he applied to the person who had been acting as the agent of the landowner for the right to sow the ground in rye. He was informed that the property was for sale; but I think a fair construction of the evidence submitted by him tends strongly to prove that he was given the right, but with the reservation that, should the land be sold, he would pay the rental, which was agreed to be one-third, to the purchaser; that he plowed and planted the field in rye, and his right to do so was never questioned. Defendant resided near-by, and evidently knew of plaintiff's possession, which was in no sense wrongful, and the raising of the crop by him. In the spring of 1902 defendant, with full knowledge of plaintiff's possession and labor, purchased the land and removed into the buildings thereon. Little was said between them as to the rights of the parties, except that plaintiff informed defendant that he was to pay one-third of the crop as rental, and requested defendant to keep his cow from pasturing on the rye. Doubtless acting upon the suggestion of plaintiff that the rental was to be one-

third of the crop, defendant constructed a fence by which he took in and inclosed about one-third of the rye, and subsequently made use of the inclosed portion of the ground for his own purposes. When the crop growing on the other two-thirds of the land had matured, plaintiff procured and paid a third party to harvest the standing rye. He accompanied his employee to the land for the purpose of starting the work, when he was met by defendant, assaulted, knocked down and kicked, and ordered to leave the premises, or that, in case of his failure, defendant would kill him. He was compelled to leave. After the rye was cut defendant took possession of it, shocked and stacked it, and assumed absolute control over it. Plaintiff then replevied the rye.

The defendant, Ephraim Sohn, who had been the aggressor in committing the assault and forcing plaintiff to leave the premises, was not called as a witness, and offered no denial of any of plaintiff's testimony. He appears to have tried his cause in the form of brute force and violence, and offered no explanation of, nor excuse for, his conduct. The main issue presented by defendant was as to the authority of the person who had theretofore been looking after the landowner's interest, the owner being a nonresident, and from whom plaintiff claimed he had received permission to crop the land, to grant the permission claimed. On cross-examination the person referred to, being interrogated upon the subject, testified as follows: "Q. And didn't you say to Mr. Warner, 'If you want to take your chances, you can go ahead and put some rye on that land?' A. No, sir. Q. You didn't say anything of that kind and substance? A. He says, 'I am going to put it in rye anyway', and I says, 'If you do, the ground will draw one-third, no matter who owns it.' Q. And you gave him to understand that if he put that into crop he would have to pay one-third rent? A. I told him that is what he would have to do. Q. Whether Hall kept it or whether Hall sold it? A. That it didn't make any difference who got it. * * * Q. Now, you say that

what you did was for Mr. Morlan? A. Yes, sir. Q. And you had his authority? A. Yes, sir."

While it is true that this evidence cannot be considered upon the question as to whether the case should have been submitted to the jury, instead of being taken away from them by the instruction directing the verdict, yet it might, possibly, be considered for the purpose of arriving at a conclusion as to the good faith of plaintiff in the cultivation of the land. That he did act in good faith, believing he would be protected and permitted to reap the crop unmolested, I have not the shadow of doubt, although it must be conceded that he relied upon the honesty of those with whom he dealt to a greater degree than the sequel seems to have justified.

I have examined all the evidence, and cannot find a single justification for the action of the district court, nor for the affirmance of its judgment in this. That the issues should have been submitted to the jury is, to my mind, beyond question, and that by the judgment of the district court plaintiff has been unjustly deprived of his property through agencies of force and fraud is equally clear.