HEILWIG *v.* NYBECK.

1. COMPROMISE AND SETTLEMENT—TAX TITLES—EVIDENCE.

Plaintiff entered into a contract with a third party to buy, and the third party to procure and convey to plaintiff, certain tax interests, and give the statutory notices to redeem to the owners of the record title. Plaintiff paid one-half the purchase price and entered into possession, and planted a crop of potatoes. The claimant of title harvested the crop. Later plaintiff's attorney attempted to effect a compromise of the claim of plaintiff who received a part of the amount agreed upon: plaintiff, however, denied that he consented to compromise his claim and accept that amount in full settlement. *Held*, to raise a question of fact for the jury as to the alleged compromise.

2. TAXATION—VENDOR AND PURCHASER—INTEREST OF PURCHASER—POSSESSION.

A contract with a person who had no interest in certain land, to procure tax titles outstanding and to convey them to plaintiff, gave plaintiff no right of possession as against the holder of the record title, especially when no notice to redeem was ever served.

3. WILLS—HUSBAND AND WIFE—LIFE ESTATE.

Where the testator by his will devised to his wife all his estate, real and personal, with full control during her life, and power to bequeath and devise the property to their children, in such shares as she might think proper; testator expressing a hope that if their conduct was satisfactory the property might be equally divided, the will conveyed a life interest which she was entitled to transfer by deed.

4. LIFE TENANCY—TAX TITLES—PURCHASE—PAYMENT.

By procuring a deed from the purchaser of a tax title for taxes which the life tenant ought to have paid, the latter acquired no additional interest but quieted title to the property and in legal effect paid the tax.

5. ESTATES—REAL PROPERTY—PRODUCTS.

Ownership of real property carries with it as an incident

the *prima facie* right of ownership of both the natural products of the soil, trees, etc., and the emblements or annually sown crops: a mere intruder who plants crops on the land is not entitled to the products so long as they remain unsevered.

6. SAME—TRESPASS—LIFE ESTATE—EMBLEMENTS.

A mere possessor of public land, who has planted a crop thereon, cannot maintain an action against a purchaser who enters and removes it: the rule being well settled that a crop sown or planted by a trespasser and remaining unsevered belongs to the owner of the land.

7. TROVER AND CONVERSION—TITLE—CROPS.

It is a defense to an action of trover for crops which the plaintiff claims to own that title of the realty is in a third party and not in plaintiff.

8. PLEADING—NOTICE OF DEFENSES.

In trover for the conversion of a crop of potatoes, the defendant may show that title to the land on which they were raised was in third persons, without giving special notice of the defense. In trover the right of property is in issue: possession is not sufficient to maintain the action, although it may be evidence of property. A mere intruder upon land cannot maintain the action.

Error to Alger; Fead, J. Submitted January 15, 1914. (Docket No. 95.) Decided March 26, 1914.

Trover by Herman Heilwig against Erickson Nybeck for the conversion of a crop of potatoes. Judgment for defendant, and plaintiff brings error. Affirmed.

*R. R. Stewart,* for appellant.

*Henry B. Freeman,* for appellee.

STONE, J. This is an action of trover, and involves the ownership of a crop of potatoes, planted and cultivated by the plaintiff, and harvested and sold by the defendant in the year 1908. This crop was grown upon a piece of land hereinafter described. The amount and value of the crop were in dispute upon

the trial. The connection of the respective parties with the land upon which the crop was grown was as follows:

In July, 1904, the plaintiff entered into a contract with Charles R. Brown, which was as follows:

"This agreement, made and entered into this 8th day of July, 1904, by and between Charles R. Brown of Marquette, Michigan, party of the first part, and Herman Heilwig of Munising, Michigan, party of the second part. Witnesseth: That whereas, the said Charles R. Brown has heretofore purchased in the name of Peter White, the southwest quarter (¼) of the northeast quarter (¼) and the southeast quarter (¼) of the northwest (¼) of section twelve (12) town forty-six (46) north of range twenty (20) west, for delinquent taxes of 1897, 1898, and 1901; and whereas the said Brown has undertaken to procure the said tax titles acquired by said White and to give the statutory notice requiring the owners of said land to redeem the same within six months; and whereas the said Herman Heilwig desires to purchase said lands: Now therefore, the party of the first part agrees to sell said tax-title interest to the said Herman Heilwig, subject to the taxes assessed thereon from and after 1901 for the price and sum of $200.00, $100.00 cash in hand and the balance in one year from this date with interest at 7%. And the party of the first part further agrees to give the notices above referred to and in case said lands shall be redeemed by original owners, then the party of the first part is to repay to the party of the second part any and all moneys paid by him on said lands with interest at 7%. And the party of the second part hereby agrees to purchase said tax title to pay for the same as above set forth. Witness our hands the day and year above written.

"CHARLES R. BROWN.
"HERMAN HEILWIG."

This agreement was, upon the trial, first admitted in evidence by the trial judge, who afterwards ruled it out because it gave no right of possession to the plaintiff, to which ruling plaintiff excepted.

It appeared in evidence that after the above agreement was made, plaintiff took possession of the land therein described, which had been vacant for some time, and fitted some of it for cultivation, and cropped it until 1908. Plaintiff did not live on the land, but lived about 2½ miles from it. In the spring of 1908 plaintiff planted three or four acres of this land to potatoes and cultivated them. He testified that defendant knew that he, plaintiff, was working the land from 1904 down. About the middle of October, 1908, plaintiff went over to look at the crop, and found the defendant and three other men and three women digging the potatoes. Plaintiff said to defendant:

"You better quit; you have no right to go on this land."

Defendant asserted a right, and invited plaintiff to go up to his house and see his deed. Plaintiff went with defendant, and was shown a deed of the land to the defendant. Defendant proceeded to harvest and sell the crop.

Plaintiff then employed counsel. His counsel, with his consent, attempted to settle with the defendant, and went so far as to get an offer of $75 from the defendant. In fact, it is undisputed that defendant paid plaintiff's attorney $50 to apply on the settlement, which $50 the plaintiff accepted, but claims, in his testimony, that he never agreed to accept the $75 in full settlement. The remaining $25 was later offered to the plaintiff, and he refused to accept it in settlement. Whether there was a settlement or not, in our view of the record, presented a question of fact for the jury; and, as the trial court directed a verdict for the defendant, we must look further for a justification of such direction.

It appears that this land had been unoccupied for some years before the plaintiff went into possession; the valuable timber had been taken off by one John

C. Fowle, who had claimed that he' owned the property, after which it remained wild and unoccupied, and had been sold for taxes before the plaintiff went upon the land. It appears in evidence that after the defendant took possession of the land, Charles R. Brown paid back to the plaintiff the $200 which the plaintiff had paid him on the contract.

On the part of the defendant, the evidence showed that he was a section foreman on the railroad, and had lived in the section house located on a part of the premises, the railroad running through the land. The defendant testified that he knew the plaintiff, and knew that he planted some potatoes on this land in the year 1908, and knew that he had taken possession of the land in 1904, and saw him working there at different times. As tending to show the defendant's right to the premises, and therefore to the crop of potatoes, the following instruments were offered in evidence: A patent from the United States government to John Carney, bearing date December 10, 1880, recorded July 6, 1882, conveying the premises in question. The defendant then offered in evidence the last will and testament of John Carney, deceased, which was admitted to probate in Marquette county November 10, 1884, and was as follows:

"Know all men by these presents, that I, John Carney, of the city of Marquette, in the county of Marquette, State of Michigan, being of sound and disposing mind and memory, but in feeble health, do make and publish this my last will and testament. I give and devise to my loved wife, Bridget Carney, all my property, real and personal and all my right, title and interest in my property, which I may acquire after the date of this will, and the above mentioned property is to be and remain under her control during her life, with full power at the time of her death to devise and bequeath to our three children in such shares as to her may seem fit; at the same time I express a hope that if each of said children's conduct be satisfactory to my wife, that the property would be equally divided

between them after her death.  This suggestion I do not intend to deprive her in any way of disposing of the power above mentioned.  I ordain and appoint my wife, the said Bridget Carney, executrix of this my last will and testament.

"In testimony whereof, I have hereunto set my hand and seal, and publish and declare this to be my last will and testament, in the presence of the witnesses below named, this 12th day of August, in the year of our Lord, 1884.

"JOHN CARNEY."

Defendant next offered in evidence a deed from the auditor general of the State of Michigan to Charles Johnson, being the usual auditor general's deed, for the delinquent taxes of 1886.  The deed bears date February 8, 1892, and was recorded February 22, 1892.  This deed was received in evidence over the objection and exception of plaintiff.  Defendant then offered in evidence the record of a quitclaim deed from Charles Johnson and wife to Bridget Carney, dated May 11, 1892, conveying the premises described in the patent.  The defendant next offered in evidence the record of a warranty deed dated April 30, 1892, from Bridget Carney of Marquette, Mich., to John C. Fowle, and recorded May 20, 1892—consideration $400.  Defendant then offered in evidence the record of a quitclaim deed from John C. Fowle and wife of Newburgh, N. Y., to the defendant.  This deed was dated August 10, 1908, and recorded August 26, 1908, and expressed a consideration of $350.

With the record in this condition, the trial court directed a verdict for the defendant, charging the jury, among other things, that the plaintiff's entry upon this land was that of a squatter, or trespasser, that he had no right or title therein, and that he could not maintain the action for the reason that he was not the owner of the property in question, and a judgment for the defendant was entered.

The plaintiff has brought the case here for review,

and assigns error upon the charge of the court above indicated, and also that the court erred in rejecting the contract offered by the plaintiff between himself and Charles R. Brown; also that the court erred in receiving in evidence the tax deed from the auditor general to Charles Johnson.

An examination of the record satisfies us that the contract between Charles R. Brown and the plaintiff gave the latter no right to the possession of the land. There is nothing to indicate that Brown had any title whatever to the property, and at most he undertook to procure the tax titles which had been acquired by Mr. White. There is no evidence that any of the statutory notices were ever given as contemplated by the contract; and it requires no citation of authorities to show that the instrument gave neither Brown nor the plaintiff any right to the possession of the land in question. We do not think there is any doubt of the correctness of the charge that the plaintiff was a mere squatter, or trespasser, upon this land, so far as is shown by the record.

What were the defendant's rights? We are of opinion that the will, properly construed, gave Bridget Carney a life estate in this property, which she had a right to convey, and her grantee would take her life estate. We do not agree with plaintiff's counsel that it would be necessary for Bridget Carney to obtain any license from the probate court to convey her life estate. So far as the record speaks, Bridget Carney is still alive, and that fact would give defendant a right to possession of the premises during her life. By comparison of the dates it does appear that it was the duty of Bridget Carney, as the life tenant, to pay the taxes of 1886. We think by her deed from Charles Johnson she quieted his title to the property, but the transaction amounted to the payment of taxes by her. The reception in evidence, however, of this deed was harmless error at most.

The question then arises whether the plaintiff can maintain an action of trover. At the time this crop of potatoes was planted, and for some years prior thereto, John C. Fowle was the owner of the life estate of Bridget Carney, and was entitled to possession of this property; and it must be held that the plaintiff was a mere intruder.

It is a familiar rule that the ownership of realty carries with it, as an incident thereto, the *prima facie* presumption of the ownership of both the natural products of the land, such as grass and trees, and the emblements, or annually sown crops, and that where a mere intruder upon the land plants crops thereon, such crops, so long as they remain unsevered, are the property of the owner of the land. 12 Cyc. pp. 976, 977, and cases there cited.

A mere possessor of public land who has planted a crop thereon cannot maintain an action against a purchaser who enters and removes such crop.

The rule is well settled that a crop sown or planted by a trespasser, so long as it remains unsevered, belongs to the owner of the land. *Warner* v. *Sohn*, 86 Neb. 519 (125 N. W. 1072). See note to this case reported in 21 Am. & Eng. Ann. Cas., at page 431, where many cases are cited, including that of *Stebbins* v. *Demorest*, 138 Mich. 297 (101 N. W. 528). In the case last cited Justice HOOKER, speaking for this court, said:

"As the growing crop of oats did not belong to the trespasser, it became the property of the owners of the premises, *i. e.*, the lessee, plaintiff, who can maintain trover therefor."

At the time this crop was planted we have shown that the title, so far at least as the life interest of Bridget Carney may extend, was in John C. Fowle, and it was competent, therefore, for the defendant to show title in this third person at that time. That

this may be done in an action of trover without giving notice thereof under the general issue, where the declaration does not show plaintiff's source of title, as it did not in this case, was held by this court in *Williams* v. *Brown,* 137 Mich. 569 (100 N. W. 786).

The evidence in this case so connects the defendant with the title to this land that he was entitled to show the fact of the outstanding title in Fowle when the crop was planted to defeat the plaintiff's cause of action.

In *Isle Royale Mining Co.* v. *Hertin,* 37 Mich. 332 (26 Am. Rep. 520), the plaintiff had by mistake cut certain timber upon defendant's land into cordwood, which the defendant took and used. The plaintiff sought in trover, and under a special count to recover at least the value of the labor he had expended upon the wood. It was held that he was not entitled to recover at all in the action. This case has been cited with approval by this court a number of times.

"In trover the right of property is in issue, and to sustain the action the plaintiff must prove property in himself, either general or special. Possession is not sufficient for that purpose as in trespass; it is evidence of property, but it does not, as in trespass, preclude defendant from showing property in a third person." 2 Stevens' Michigan Practice, § 291, citing many early Michigan cases.

See *Stephenson* v. *Little,* 10 Mich. 439; *Parkhurst* v. *Jacobs,* 17 Mich. 302-306; *Brady* v. *Whitney,* 24 Mich. 154-156; *Stearns* v. *Vincent,* 50 Mich. 209 (15 N. W. 86, 45 Am. Rep. 37).

Defendant can show, for the purpose of defeating the action, that plaintiff had no right of possession. The plaintiff here has shown no relationship between himself and Fowle, the owner of the land, upon which the crop was planted, nor has he shown any right to the possession of the land. He was a mere intruder.

We are of opinion that the circuit judge reached the right conclusion in this case, and the judgment of the circuit court is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.