[No. 18732.   Department Two.   May 8, 1925.]

L. E. FUGLEDE, *as Administrator etc., Appellant,* v. WENATCHEE DISTRICT COOPERATIVE ASSOCIATION *et al., Respondents,* C. M. KARLSTAD *et al., Appellants.*[1]

CROPS (2)—OWNERSHIP—POSSESSION OF LAND—PROPERTY OF ESTATE IN PROBATE. An unsevered crop, sown or grown by one in wrongful possession, belongs to the owner of the land; but after severance by the dispossessor, it belongs to the latter.

SAME (2). The right of an estate to crops, grown and severed by one wrongfully in possession of land, cannot rest upon the negligence of the administrator in failing to sever and gain possession of the crop, since the ownership of the land was not in issue and severance of the crop determined its title.

TRIAL (150)—FINDINGS OF FACT—NECESSITY—EQUITABLE ACTIONS. An action for an accounting in which there was a bill of interpleader, not recognized in personal actions at law, is one in equity, in which findings of fact are not necessary.

Appeal from a judgment of the superior court for Chelan county, A. N. Corbin, judge *pro tempore,* en-

[1]Reported in 235 Pac. 790.

tered January 14, 1924, in favor of certain defendants, in an action for an accounting, tried to the court. Affirmed.

*S. A. Bostwick,* for appellants.

*C. F. Wallace,* for respondents.

FULLERTON, J.—Prior to any of the transactions out of which the present controversy arises, one H. G. Bohlke and his then wife, Nellie Bohlke, as a community, were the owners of certain described lands situated in Chelan county, on which there was a fruit orchard. They had executed large mortgages on the property, which were foreclosed by their holders after the transactions referred to, and neither of the parties to the present action have now any interest in the lands. Nellie Bohlke died prior to the year 1921, and following her death, H. G. Bohlke was appointed administrator of her estate. On April 18, 1921, while the administration was pending, Bohlke contracted to sell to C. M. Karlstad an undivided one-half interest in the land. The contract price agreed upon was $32,800. Of this sum $500, so the contract of sale recites, was paid at the time of the execution of the instrument. By the further terms of the contract, Karlstad assumed and agreed to pay one-half of the principal mortgage then on the land and the whole of another mortgage. The remainder of the purchase price he agreed to pay in fixed yearly installments. On the execution of the contract, Karlstad was put into possession of the property.

On February 21, 1922, Karlstad entered into a contract with the respondent Associated Fruit Company, known as a crop contract. By the terms of the contract the company agreed to make certain advances to Karlstad for the purpose of growing and harvesting

the fruit crop to be grown on the land during growing season of that year, and Karlstad, in turn, agreed to turn over the crop produced to the company to be marketed. The contract contained chattel mortgage provisions, by which Karlstad mortgaged all of his interests in the fruit to the company as security for the advances. The company, at the time of the execution of the contract, advanced to Karlstad the sum of $2,310.53, taking his promissory note therefor. During the growing season it made further advancements at different times, the total aggregating $409.07. Karlstad breached his part of the contract; he neither delivered the crop grown to the company, nor did he repay to it the advances.

Karlstad delivered the crop to the Wenatchee District Co-Operative Association for marketing, and that association marketed the fruit. It made large advances to Karlstad in the way of expenses for harvesting, boxing and delivering the fruit, and advances of large sums of money, the purpose of which was not specified. The company, after selling the fruit and after deducting its advancements and charges, had remaining on hand for the person entitled to the proceeds of the fruit the sum of $2,473.42.

On March 10, 1922, H. G. Bohlke, the administrator of the estate of Nellie Bohlke, died. Her estate at that time had not been fully administered, and on December 18, 1922, the appellant, L. E. Fuglede, was appointed as administrator *de bonis non* of the estate. Between these dates there was no one acting as administrator, and it was during this period that the crops affected by the contract between the Associated Fruit Company and Karlstad were grown and severed.

On May 5, 1923, the administrator *de bonis non* began the present action against the defendant Wenatchee District Co-Operative Association to recover the

sum in their hands for the benefit of the estate of Nellie Bohlke. The association, after putting in issue certain of the allegations of the complaint, filed a cross-complaint by which it brought into the action Karlstad, one Mable Bohlke (who was the second wife of H. G. Bohlke and the guardian of his children), and the Associated Fruit Company, alleging that these parties claimed adverse interests in the funds in its hands, and that it could not determine to whom it rightfully belonged. It thereupon paid the money into court and asked that the court make the distribution. The adverse claimants set up their claims, and on the issues framed between them the court determined that the property out of which the fund arose was the property of Karlstad; that Karlstad had authority and right to pledge the property for his own uses and that he did pledge it to the Associated Fruit Company. In the judgment entered, it awarded the money to the Associated Fruit Company in satisfaction of the advances made by it to Karlstad under the contract.

It is a well settled rule that a crop sown or grown by one in possession of land wrongfully, as long as it remains unsevered, belongs to the owner of the land. (*Warner v. Sohn,* 86 Neb. 519, 125 N. W. 1072, 21 A. & E. Annot. Cas. 427, and note.) It is equally well settled that where the rightful owner of land has been dispossessed, whether rightfully or wrongfully, all crops grown and severed by the dispossessor belong to him, and that the rightful owner, even after a recovery of possession, has no right to them. (Ib.) It is true, of course, that the rightful owner of land after re-entry may recover from the person wrongfully in possession for the value of the use of the premises and for waste, but this gives him no right to the crops grown thereon and severed therefrom. As is said by

the supreme court of California in *Page v. Fowler*, 39 Cal. 412:

"It is undoubtedly true, that, at common law, a person who had been ousted from land might, after a recovery and re-entry, maintain his action of trespass for the mesne profits and for waste, for the reason that after re-entry the law supposes he has always been seized and the acts of the defendant were a continuous trespass upon the rightful possession of the plaintiff; but no case has been cited in which this principle has been held to make the owner of the land out of possession, under such circumstances, the owner of the crops grown and actually harvested by the defendant. The very fact that he may recover the rents and profits of the land, shows that he cannot recover the crops; for, as was well said in the case of *Stockwell v. Phelps,* (34 N. Y. 363), the owner of the land, in such cases, does not recover the value of the crops raised and harvested, but the value of the use and occupation of the land; and the annual crops of grain and grass, which contain both the value of the use of the land and the labor of the farmer, do not, under such circumstances, belong to the owner of the land. It would be an oppressive rule to require every one who, after years of litigation perhaps, may be found to have a bad title, to pay the gross value of all the crops he has raised."

These principles have been heretofore recognized by this court. In *Churchill v. Ackerman,* 22 Wash. 227, 60 Pac. 406, the action was to recover in damages for the conversion of wheat. The wheat was grown and severed by Ackerman while in possession of the land on which it was grown, and Churchill claimed the wheat in virtue of a superior title to the land. Churchill recovered in the court below, and this court, on reversing the judgment, used this language:

"That the title to crops follows actual possession, and not a right to possession merely, is well established; and that when a person in adverse possession

severs crops before recovery, the title thereto is in the former, is equally well established."

The court cited and quoted from a number of cases supporting the rule and concluded as follows:

"If there are any cases sustaining the contrary doctrine, they have not been suggested. We think, for many reasons, that the rule announced is a just one, and therefore adopt it. Under the law as applied to the testimony in this case, the non-suit asked for by the defendant should have been granted."

In *Clarke v, Clyde,* 25 Wash. 661, 66 Pac. 46, the action was brought to recover certain saw logs, severed from land by one in possession. The plaintiff based his title to the logs as owner of the land from which they were severed. Recovery was denied the plaintiff in the court below, and on the appeal this court affirmed the judgment. In the course of the opinion, we quoted from the case of *Brothers v. Hurdle,* 10 Ired. (N. C.) 490 (51 Am. Dec. 400), the following:

"But when one, who is in the adverse possession, gathers a crop in the course of husbandry, or severs a tree or other thing from the land, the thing severed becomes a chattel, but it does not become the property of the owner of the land; for, his title is divested—he is out of possession and has no right to the immediate possession of the thing, nor could he bring any action until he regains possession . . . the owner of the land cannot sue for the thing severed in trover or detinue as a chattel; for it is not his chattel—it did not become so at the time it was severed, and the title to it as a chattel can not pass to him afterwards, when he regains the possession, by force of the *jus post-liminii.*"

Concluding the opinion, we said:

"The principle of this case is decisive of the one before us. The appellant was out of possession of the land at the time the logs were severed and removed. The respondents were in possession, holding the lands

adversely to him under a claim of right. The appellant cannot, therefore, maintain an action against them for the recovery of the logs removed, or for their value."

The question again recurred in *Lynch v. Sprague Roller Mills,* 51 Wash. 535, 99 Pac. 578. In that case we used this language:

"It is an elementary rule of law that the occupier of land is the owner of all crops harvested during the term of his occupancy, whether the occupant be a purchaser in possession, a tenant in possession, or a mere trespasser in possession holding adversely."

See, also, *Woody v. Wagner,* 89 Wash. 429, 154 Pac. 819.

The trial court applied these principles to the facts of the present case, and it must be conceded, we think, that if they are so applicable, its judgment follows as of course. It is contended, however, that they are not applicable; that the real property upon which the crops were grown was an estate in the process of administration, and thus *in gremio legis,* and that the court should not suffer the acts or negligence of the administrator to so operate as to deprive the beneficiaries of the estate of the emoluments derived therefrom. But we cannot think these considerations in any manner affect the rule. The right of one in possession of land to take therefrom and dispose of crops grown thereon rests upon possession, not right of possession, nor upon ownership of the land, and this right must be as paramount where the right of possession and ownership in the property is in an estate as it is where the right of possession and ownership rests in an individual not so immediately subject to the jurisdiction of the court. In other words, ownership of or right to possession of the land is not the issue; it is the ownership of the crops that is in question, and this owner-

ship, when the crops are severed by the person in possession in advance of an assertion of ownership by the true owner, is in the person growing and severing them.

We have not overlooked the fact that the testimony of Karlstad, if given credence, would require a different judgment from that entered by the trial court. But that court declined to give it credence, and we see no reason to take a different view.

The appellant makes the further objection that the court erred in refusing to make findings of fact; arguing that the issues raised by the pleadings presented questions of legal and not of equitable cognizance. But the action as instituted by the plaintiff was one for an accounting, which in itself usually invokes the equity powers of the court. If, however, this be not thought sufficient, unquestionably, the cross-complaint under which the action was tried invoked such powers. It was in the nature of a bill of interpleader, a form of proceeding not recognized in personal actions at common law (except, perhaps, in actions of detinue), and of necessity was cognizable only in the chancery courts. It is equally a proceeding of equitable cognizance under our practice, in which no findings of fact are necessary.

The judgment will be affirmed.

HOLCOMB, MAIN, MITCHELL, and MACKINTOSH, JJ., concur.