[No. 25548. Department Two. September 24, 1935.]

PLAZA FARMERS UNION WAREHOUSE & ELEVATOR COMPANY, *Appellant,* v. C. V. TOMLINSON *et al., Respondents and Cross-appellants,* CLYDE H. BELKNAP *et al., Respondents.*[1]

[1]Reported in 49 P. (2d) 36.

618

*Brown & Weller,* for appellant.

*Clyde H. Belknap,* for respondents Tomlinson *et al.*

*D. R. Glasgow,* for respondent J. I. Case Company.

HOLCOMB, J.—This litigation is the aftermath of a decision rendered by this court in *Plaza Farmers Union Warehouse & Elevator Co. v.. Tomlinson,* 176 Wash. 178, 28 P. (2d) 299. In that decision, we held that the warehouse company was not entitled to maintain an action in ejectment and to quiet title against the Tomlinsons. The remittitur therein was filed in the clerk's office of the court below on February 19, 1934. Prior to the filing of the remittitur, appellant filed an amended complaint in the action, as suggested in the previous decision, seeking in the amended complaint to foreclose its equitable mortgage.

J. I. Case Company, a corporation, which had not been a party to the original proceedings, filed first a complaint in intervention to foreclose a chattel mort-

gage upon the crop raised upon the land. Frank P. Nealey, who summer-fallowed the land in 1932 as the agent and tenant of appellant, also filed a second complaint in intervention to recover the costs of producing the 1932-33 crop. Clyde H. Belknap, who, throughout the original proceedings and now, was and is the attorney of record for respondents Tomlinson, filed a third complaint in intervention to recover attorney fees and costs and to impress a lien therefor upon the crop in controversy. He had also obtained a bill of sale from the Tomlinsons of all their interest in the crop grown and harvested on the land in 1933.

After a trial to the court without a jury, after finding the corporate capacity of the parties which were corporations, the marital relation of defendants Tomlinson and the community capacity, that appellant had loaned to defendants Tomlinson the sum of $4,575, as found on the former appeal, no part of which had been paid and all remained due and owing, it made the following findings:

"That defendants failed and neglected to pay general taxes levied against the above described mortgaged premises before the same became delinquent, and that on February 23rd, 1932, plaintiff, Plaza Farmers Union Warehouse & Elevator Company, a corporation, paid such taxes with interest to date of payment in the total sum of four hundred sixty-one and 18/100 ($461.18) dollars; that defendants failed to pay interest due on the first mortgage on said premises as provided in said agreement that they should do, and on February 23rd, 1932, said plaintiff paid said interest in the total sum of seven hundred twenty and 70/100 dollars ($720.70); that defendants failed and neglected to keep fire insurance on the buildings on the mortgaged premises as required by the first mortgage thereon, and that on September 23rd, 1932, plaintiff paid the sum of eighty-five and 50/100 dollars ($85.50) premium on fire insurance policy thereon.

"That defendants, at all times since the commence-

ment of this action, were and now are the owners in fee of the real estate hereinbefore described.

"That on or about September, 1932, plaintiff, Plaza Farmers Union Warehouse & Elevator Company, a corporation, instituted the original action herein against the defendants, as shown by the files herein, wrongfully alleging that it was the owner of the real estate hereinbefore described, and seeking the order of the court dispossessing the defendants, and quieting the title of said plaintiff to said real estate. That pursuant to the allegations contained in said complaint, and as an aid to accomplish their said purpose set forth in said complaint, said plaintiff obtained a temporary injunction, wrongfully restraining defendants from cultivating or seeding their said land. That thereafter an invalid judgment was obtained by the said plaintiff in the above entitled proceedings, Cause No. 91552, sustaining its original complaint, purporting to quiet the title of said plaintiff to said real estate, and ordering the evacuation of said land by the defendants. That thereafter defendants appealed from said wrongful decision, and the supreme court, in January, 1934, reversed said decision. That during all of said period, while said proceedings were pending, defendants were either in the complete or the partial and joint possession of said real estate and since the decision of said supreme court, have been in complete possession of all said real estate.

"That under said restraining order, and aided by said invalid judgment, plaintiff, through its agent or tenant, Frank Nealey, second intervenor herein, wrongfully seeded and harvested a crop of wheat upon defendants' said land, amounting to 6,719.4 bushels.

"That defendants, prior to the harvesting of said wheat and the seizure by plaintiff, Plaza Farmers Union Warehouse & Elevator Company, a corporation, transferred and conveyed, for a valuable consideration, to Clyde H. Belknap, one-third thereof, and subject to the transfer of said one-third interest, made, executed, and delivered to J. I. Case Company, a corporation, first intervenor herein, a chattel mortgage upon the remaining two-thirds of said crop to secure the payment of two promissory notes aggregating $875.00 with in-

terest thereon, upon which promissory notes there is a balance of $754.33 remaining unpaid.

"That the defendants have demanded of said plaintiff, the surrender and restitution to them of all of said wheat, but said plaintiff has wholly failed and refused to surrender any portion thereof.

"That the highest value of said wheat up to the date of trial was 71¢ per bushel.

"That it is inequitable for plaintiff, Plaza Farmers Union Warehouse & Elevator Company, a corporation, to be permitted to proceed with said foreclosure proceedings until it has made complete restitution to Clyde H. Belknap, third intervenor, one-third of said wheat at 60¢ per bushel, to J. I. Case Company, a corporation, first intervenor, the full amount of its indebtedness, to-wit, $754.33, plus $75.00 for its attorney's fees herein, and costs in the sum of $4.00, and to the defendants, the value of two-thirds of said wheat at 71¢ per bushel, less the amount due J. I. Case Company, a corporation, as aforesaid, and less the reasonable cost of raising said crop of wheat.

"That by virtue of the false and invalid title conferred upon plaintiff, Plaza Farmers Union Warehouse & Elevator Company, a corporation, by reason of said invalid proceedings and judgment, said plaintiff made application to the United States Government for what is known as the allotment for not planting a certain percentage of the acreage of said land to wheat. That plaintiff was not the owner of said crop, and was entitled only to the reasonable cost of producing said crop, and to no more, and defendants are the owners of said allotment, and entitled to the entire proceeds thereof.

"That the reasonable cost of producing said crop is as follows:

| | |
|---|---:|
| Plowing and summerfallowing.... | $1,000 |
| Seed wheat | 84 |
| Seeding | 125 |
| Sacks | 50 |
| Combining | 625 |
| Hauling to market | 131 |
| TOTAL | $2,015 |

"That Frank Nealey has been paid by said plaintiff, the entire cost of producing said crop."

The court then found that, on the former appeal, the costs were assessed against this appellant in the sum of $286.55, all of which were paid by the third intervener Belknap, but that he had voluntarily remitted from the amount thereof the sum of $57.50, leaving a balance due of such costs $229.05, with interest thereon at six per cent per annum from January 11, 1934. It found that Belknap, on February 19, 1934, filed his lien for advances, costs and services, after a settlement with defendants Tomlinson. The court further found that, during all of the times mentioned and during the pendency of the original action, which was decided adversely to this appellant, defendants Tomlinson were in either the complete or the partial and joint possession of the real estate.

The following important findings were made upon essentially undisputed evidence:

"That on the 10th day of June, 1933, the defendants, Tomlinson, then being in possession of said real estate, and the lawful owners thereof, made settlement with Clyde H. Belknap, third intervenor, for legal services rendered and to be rendered in said proceedings, by assigning to third intervenor, all judgments for costs obtained, and to be obtained against said plaintiff and respondent upon said appeal, and by transferring and conveying to third intervenor, one-third of all crops then growing upon said real estate. That said one-third of said wheat was to be delivered at the warehouse at the expense of said defendants, and to be clear and free from all charges or liens, all expenses or charges for the production and marketing of said one-third portion of said wheat to be borne by the remaining two-thirds of said wheat, which bill of sale was forthwith, on July 10, 1933, duly filed, recorded and indexed in the office of the Auditor of Spokane County, Washington. That actual written notice of the transfer of said one-third portion of said wheat to third inter-

venor was given to plaintiff on July 17, 1933, at which time all of the wheat mentioned in this complaint was standing upon said real estate, unsevered from the land. That said assignment of the aforesaid judgment for costs was duly filed in the office of the clerk of said superior court, in said cause, on July 10, 1933.

"That on February 19, 1934, Clyde H. Belknap duly filed notice of claim of a lien in said cause in the office of the clerk of said superior court and said clerk duly caused the entry of the name of claimant, the amount of claim, and the date of filing said claim to be made upon the execution docket on the page where said judgment was entered.

"That said Clyde H. Belknap has demanded that plaintiff, Plaza Farmers Union Warehouse & Elevator Company, a corporation, pay said judgment, but it has wholly refused and failed to pay the same, or any part thereof. . . .

"That second intervenor was tenant or agent of plaintiff. That said plaintiff, and second intervenor, acting for plaintiff as aforesaid, pursuant to the authority contained in said judgment of the superior court, before the same was reversed by the supreme court of the state of Washington, wrongfully seized the entire crop of wheat aforesaid, consisting of some 6,719.4 bushels, and placed said wheat in plaintiff's warehouse, and plaintiff retained, and continued to retain, the possession of said 6,719.4 bushels of wheat.

"That after the reversal of said superior court judgment, third intervenor, on or about February 19, 1934, demanded of plaintiff that it forthwith surrender to third intervenor, his one-third portion of said wheat, or in lieu thereof, that it pay to third intervenor, its value, but said plaintiff failed and refused either to deliver said wheat to third intervenor, or to pay him its value. That the customary rental of said land is one-third of the crop produced, payable in kind. That plaintiff, by its refusal, either to deliver said wheat to said Clyde H. Belknap, or to pay him its value, converted said wheat to its own use.

"That third intervenor's one-third portion of said 6,719.4 bushels of wheat at the time of its conversion was stipulated in open court to be of the reasonable

market value of 60c per bushel, or $1,343.88, as of June 18, 1934, and third intervenor has been damaged by the wrongful conversion of the wheat as aforesaid, in the full sum of $1,343.88, with interest thereon at the rate of 6% per annum from June 18, 1934, no part of which sum has been paid.

"That second intervenor and first intervenor claim some right, title, lien, or interest in said wheat, adverse to the right of third intervenor, as hereinbefore set forth, but their rights, if any, are inferior and subject to the rights of third intervenor herein."

Based upon the foregoing findings of fact, the trial court entered conclusions of law and a decree conforming thereto, and the decree contains the following:

"That said Clyde H. Belknap, third intervenor, is entitled to recover judgment against Plaza Farmers Union Warehouse & Elevator Company, a corporation, in cause No. 94087, in the sum of $229.05, with interest thereon at the rate of 6% per annum from January 11, 1934, and for all his costs and disbursements therein expended.

"That said Clyde H. Belknap's attorney's lien is a good and valid lien upon the judgment filed and entered on February 19, 1934, in the office of the clerk of the superior court of the state of Washington, in cause No. 91552, in which said Plaza Farmers Union Warehouse & Elevator Company, a corporation, was plaintiff and respondent, and C. V. Tomlinson and Effie Tomlinson were defendants and appellants, said judgment being in the sum of $286.55. That said attorney's lien should be foreclosed, and execution issue in favor of said Clyde H. Belknap, and against said Plaza Farmers Union Warehouse & Elevator Company, a corporation, for the sum of $229.05, with interest thereon at 6% per annum from January 11, 1934, together with all his costs and disbursements therein expended."

Neither the plaintiff warehouse company nor the third intervener, as successor to the interests of the Tomlinsons, were satisfied, and both appeal. For

brevity, however, we shall refer to them as appellant and third intervener only.

It cannot be successfully contended by appellant, after our previous decision, that it has any rights which can be asserted as an exclusive, adverse possessor against respondents Tomlinson or against the third intervener, who succeeded to their rights.

The cases cited by appellant, *Churchill v. Ackerman*, 22 Wash. 227, 60 Pac. 406; *Clarke v. Clyde*, 25 Wash. 661, 66 Pac. 46; *Lynch v. Sprague Roller Mills*, 51 Wash. 535, 99 Pac. 578; and *Fuglede v. Wenatchee District Cooperative Association*, 134 Wash. 350, 235 Pac. 790, 39 A. L. R. 953, to the effect that crops harvested during the term of the occupancy of an occupier of the land belong to such occupier, whether he be a purchaser in possession, a tenant in possession, or a mere trespasser in possession holding adversely, have no application to this case.

Although the other parties discuss those cases at length, somewhat discursively, this case is governed by Rem. Rev. Stat., § 1742 [P. C. § 7327], reading:

"If by a decision of the supreme court the appellant becomes entitled to a restoration of any part of the money or property that was taken from him by means of the judgment or order appealed from, either the supreme court or the court below may direct an execution or writ of restitution to issue for the purpose of restoring to the appellant his property, or the value thereof. But property acquired by a purchaser in good faith, under a judgment subsequently reversed, shall not be affected by such reversal."

Under that statute, respondents Tomlinson, and those claiming under them by chattel mortgage and by bill of sale, are entitled to be fully restored to all the rights they had when the action was originally begun against them by this appellant. The then successful appellant is entitled to a restitution of every-

thing still in possession of his adversary in specie; not the value, but the thing. If money has been collected by the plaintiff in the judgment, whether under execution or not, an action lies against him to recover it back. *Singly v. Warren,* 18 Wash. 434, 51 Pac. 1066, 63 Am. St. 896.

That statute, the above cited case, and other intervening cases, were before us in *Sanger Lumber Co. v. Western Lumber Exchange,* 128 Wash. 335, 222 Pac. 609, and the statements made in the *Singly* case, *supra,* were approved. Among other things, it was there said:

"It must be remembered that this is a strict statutory proceeding, and that equitable relief is not available; that either the plaintiff is entitled to the fund without any restrictions, or the defendant is entitled to that fund, equally free from conditions."

In an earlier case, *Laurendeau v. Fugelli,* 5 Wash. 632, 32 Pac. 465, we pointed out the distinction between adverse possession which was truly adverse, and adverse possession which was merely trespass, and approved a statement by the United States supreme court in *Atherton v. Fowler,* 96 U. S. 513, to the effect that possession which was merely unlawful and without the foundation of any right whatever, could never be the basis of the acquisition of title as against an owner who had never consented to such possession, or who interrupted it upon his first notice of it. See, also, *Myer v. Roberts,* 50 Ore. 81, 89 Pac. 1051, 12 L. R. A. (N. S.) 194, 126 Am. St. 733; *McGinnis v. Fernandes,* 135 Ill. 69, 26 N. E. 109, 25 Am. St. 347.

According to the findings of the court, the possession of this appellant was a mere partial or divided possession, until the final decision, and was only

secured by reason of the restraining order issued by the lower court.

If the Tomlinsons had originally prevailed in the lower court, there could be no doubt that they would have been entitled to the crop. The same thing must obtain when the judgment of the lower court was reversed on appeal here, and under the statute above cited, they must be restored to the same rights they had before that litigation was begun. They were adjudged to be the owners of the land and not this appellant. In one of the cases cited by appellant, this court said:

"It is a well settled rule that a crop sown or grown by one in possession of land wrongfully, as long as it remains unsevered, belongs to the owner of the land." *Fuglede v. Wenatchee District Cooperative Association,* 134 Wash. 350, 235 Pac. 790, 39 A. L. R. 953.

A further contention made by appellant is that a United States wheat allotment should go to it because a paragraph of the allotment contract provides:

" '. . . there shall be made to the producer . . . an adjustment payment in two parts in respect of the 1933 wheat crop to be based upon the farm allotment for this farm.' The term 'producer' is defined in the preamble to the contract as one 'who during the period of production and harvesting of the 1933 wheat crop operated a farm which is described in the application for wheat allotment contract heretofore executed by the producer.' "

Appellant, or its agent, was not entitled to the 1933 crop if it was not the producer. We agree with the finding and conclusion of the trial court that neither appellant nor its agent Nealey was entitled to seed and produce the crop of 1933, although it allowed appellant all that it had reasonably expended in that

respect, which we think was all to which it was entitled.

■ The trial court subordinated the rights of appellant and second intervener Nealey to the other parties, but allowed the cost of producing the crop, as itemized in the quoted finding, in the sum of $2,015. The third intervener also contends on his cross-appeal that, since the evidence of respondents Tomlinson was undisputed to the effect that they could have produced the crop in 1933 at one-half the price at which others could have produced it, appellant should not have been allowed more than one-half thereof, or $1,007.50.

Again we agree with the trial judge when he said, in effect, that they had taken land under lease in Idaho and were then giving much if not most of their time to raising a crop of wheat there; that they made no objection to the coming upon the land of Nealey as agent of appellant and performing the work of preparing it for the crop; that, although the sowing of the wheat and the harvesting of the crop were done by appellant under the protection of a restraining order and later of an invalid judgment which was not superseded, all of which precluded respondents from sowing or harvesting the crop themselves, still it would be unjust to deprive appellant of a reasonable compensation for the cost of seeding the land and harvesting the crop grown thereon for that year.

Although the testimony of respondents was not disputed, it seems that the trial judge did not give that evidence full credit, owing to the circumstances, and therefore made his finding under other evidence that the reasonable value thereof was as itemized and the total cost as heretofore quoted, allowing $2,015 therefor. Since that was to some extent the fault of

respondents and only makes appellant whole, we shall not disturb that result.

Contention is made by appellant that the third intervenor is not entitled to a set-off in any sum whatever. We think that follows inevitably, under our statute heretofore set out.

Other points have been raised and argued by the parties, which have been examined and, we consider, fully determined by what we have hereinbefore said.

We conclude that the findings, conclusions and judgment of the trial court are in all things correct, and they are affirmed on both appeals.

MILLARD, C. J., MITCHELL, STEINERT, and BEALS, JJ., concur.

