[No. 13779. Department One. April 3, 1917.]

J. M. ROGERS *et al.*, *Respondents*, v. W. P. REYNOLDS, *Administrator etc.*, *Appellant.*[1]

MINES AND MINERALS—LABOR LIENS—OWNERSHIP OF PROPERTY—ESTOPPEL. A partnership, consisting of the principal owner of a mining company and his brother, is estopped to assert ownership of two donkey engines loaned to the company, as against labor claims, where it appears that the engines were used continuously by the company in its operations, and at one time, in negotiating with the labor claimants, the company proposed to mortgage the engines for their security and the partners made no objection thereto and asserted no claim until after suit brought.

SAME—LABOR LIENS—PLEADING—ESTOPPEL. In an action to foreclose labor liens upon the property of a mining company, including two engines, it is not necessary to plead an estoppel respecting the company's title to the engines, where there was nothing to indicate that the right to include the engines rested upon an estoppel at the time the labor was performed, the liens filed, or the action brought.

SAME—LABOR LIENS—OWNERSHIP OF PROPERTY. Laborers claiming liens upon the property of a mining company need not inquire into the ownership of the tools used by them or prove that their work was done in reliance upon the company's ownership, in order to assert an estoppel against third persons.

ESTOPPEL—SILENCE. An estoppel may be created by silence where it operates as a fraud, and is to be invoked in the interest of equity and good conscience.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered March 6, 1916, upon findings in favor of the plaintiffs, in an action to foreclose laborer's liens, tried to the court. Affirmed.

*Hudson, Holt & Harmon*, for appellant.
*Edward Brady* and *Geo. H. Rummens*, for respondents.

MORRIS, J.—Respondents claim laborers' liens as coal miners upon certain property as the property of the Prince

[1]Reported in 164 Pac. 80.

Coal Mines Company. The appeal is taken from a decree in their favor.

The appeal is narrowed down to two donkey engines, which appellant claims were not the property of the coal mines company, but were loaned to it for temporary use by a copartnership composed of W. D. C. Spike, deceased, and his brother, A. W. Spike. The mine was owned by one Lambert, with whom W. D. C. Spike made a contract under which he entered into possession and commenced operation. Shortly thereafter the Prince Coal Mines Company was organized, to which Spike transferred all his interest. The work for which liens are claimed was performed between November 1, 1914, and April 1, 1915, while the mine was operated by the coal mines company.

On behalf of appellant, it is claimed that it was established that these donkey engines were at all times the property of W. D. C. Spike and A. W. Spike, and were taken up to the mines in December, 1914, for temporary use only, and that it was the intention at that time that such use should continue thirty days, when the donkey engines were to be returned. Upon reaching the mine, the engines were used continuously as part of the operating equipment until the mine was closed the last of March, 1915, one of the engines being used to pump water for the coal washers, and the other attached to a boiler furnishing steam used in the operation of the bunkers and fan. So far as the record shows, there was nothing, at the time the labor was performed, to indicate there was any copartnership relation between the Spikes, or that these engines belonged to any one other than the company operating the mine. W. D. C. Spike was the main spirit in the Prince Coal Mines Company and practically the owner of its stock. There was nothing to indicate that these two donkey engines were other than the remainder of the personal property used in the development of the mine, or that any one, other than W. D. C. Spike or the coal mines company, claimed any interest in

them. So far as the record shows, the present claim to these two engines was made for the first time after the death of W. D. C. Spike, in the pleading of appellant. No such claim was made by W. D. C. Spike, who, prior to his death, had permitted a default to run against himself.

During negotiations looking to a settlement of these labor claims, an attempt was made to bring about a settlement by giving a mortgage to a trustee on all the property at the mine. The description of the property in this mortgage was broad enough to include these two engines. During these negotiations, W. D. C. Spike informed those present representing the different parties that these two engines were included in some form of security he had previously given a Tacoma bank to secure certain of his obligations to the bank, and that it would be necessary for him to obtain a release from the bank before they could be listed with the other security in the proposed mortgage. For this purpose, he went to the bank and effected some form of exchange of securities releasing the engines from the claim of the bank, and bringing back a form of release to the place where the negotiations were being carried on, in order that the engines might be safely and legally included in the mortgage. A. W. Spike unquestionably was present during a part of these negotiations and had full knowledge of the intention to include the two engines in the mortgage. He then made no claim that the ownership was other than it was then in effect represented to be, either in his brother or in the coal mines company. He not only failed to make any claim then, but continued in his failure until after the default and death of his brother, when, for the first time, he puts forth the claim now contended by appellant. The mortgage above referred to was, for reasons now not necessary to detail, never executed, but its execution was not necessary in order to give due evidentiary weight to the facts.

It seems to us that these facts, taken in connection with others, work an estoppel against any claim on the part of A. W.

Spike, or those representing W. D. C. Spike, that these engines should be exempt from the liens as property of the coal mines company. It is true, as argued by appellant, that, as a general rule, an estoppel must be pleaded and proved, and that there must be some element of fraud, either in the intention of the party estopped or in the effect of the evidence relied upon. So far as the pleadings are concerned, no claim to these engines was set up until appellant came into the case, and there is nothing to indicate, at the time the respondents performed their labor, filed their liens or brought this action to foreclose them, that their right to include the engines would rest upon any form of estoppel.

Appellant asserts that respondents made no inquiry into the ownership of these engines, and that, had they done so, they would have learned the truth. We do not think that the law requires that men, under such circumstances, in order to protect their rights, should inquire into the ownership of the tools and appliances used by them in the performance of their work. Nor is it necessary to offer proof to the effect that the work was done in reliance upon the ownership of these engines. The men knew by whom they were employed, what they were to do, and what was being furnished them to do with. They knew whoever was operating the property employed them to perform certain labor and furnished them with certain appliances, and that is all that men in like circumstances would ever know or be charged with knowing, in the absence of actual or constructive knowledge to the contrary. Nor was it necessary for these claimants to do any act, during the performance of this labor at this mine, to indicate that they looked to these engines as security in any other light than they regarded other property, which, to all intents and purposes, so far as any outward appearance went, was all of the same character so far as its ownership was concerned. Neither is it necessary to point to any special word or act on the part of those now represented by appellant to justify an estoppel. For an estoppel will be

created by silence, where it operates as a fraud, as effectually as by spoken word or overt act. Estoppel is a doctrine enforceable by the courts whenever the equities of the particular case demand it. Sometimes it may be predicated upon word or action, sometimes upon the lack of them; but whatever its origin, it is invoked in the interest of equity and good conscience. Reading this record and giving to all the facts that weight which, in our opinion, they should receive, we are convinced, as was the lower court, that these lien claimants are entitled to relief as against these engines.

The judgment is affirmed.

ELLIS, C. J., CHADWICK, MAIN, and WEBSTER, JJ., concur.