[No. 15394.   Department Two.   October 1, 1919.]

ₐANDERSONIAN INVESTMENT COMPANY, *Appellant*, v.
T. W. WADE, *Respondent.*[1]

LANDLORD AND TENANT (129)—UNLAWFUL DETAINER—DEFENSES—
EQUITABLE ESTOPPEL.  In unlawful detainer of leased premises in
lawful possession, upon an attempted forfeiture of the lease for
breach of conditions, the tenant may present a defense, legal or
equitable, excusing the breach, and may show equitable estoppel to
enforce the conditions.

EVIDENCE (168–173) — To VARY WRITING — CONTEMPORANEOUS OR
SUBSEQUENT AGREEMENTS.  While a parol agreement contemporaneous
with the signing of a written lease, may not, standing alone, be
shown contradicting the terms of the lease as to the exclusive use
to which the property was put, yet parol evidence is admissible to
show that subsequently one of the parties acted upon and the other
acquiesced in an oral addition to or modification of the written
contract.

ESTOPPEL (48, 54)—LANDLORD AND TENANT (40, 129)—WAIVER OF
FORFEITURE.  A landlord is estopped to declare a forfeiture of a
lease for breach of conditions as to the purposes for which the
premises could be used, where he permitted the tenant to occupy the
premises in contravention of the terms of a written lease during
the entire period of the first term, and his agent gave express consent
to continue to do so during the second term and to alterations for
that purpose, which the tenant made at considerable trouble and
expense.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered March 19, 1919, upon
findings in favor of the defendant, in an action of
forcible entry and detainer, tried to the court. Affirmed.

*Piles & Halverstadt* (*F. C. Reagan,* of counsel), for
appellant.

*Dudley G. Wooten,* for respondent.

FULLERTON, J.—In February, 1917, the appellant,
Andersonian Investment Company, being the lessee of

[1]Reported in 184 Pac. 327.

a certain building in the city of Seattle, sublet a store-room therein, at a stated monthly rental, to the respondent, Wade, for a term of one year. The lease to Wade was in writing, and contained a stipulation that the storeroom was to be used "for the purpose of conducting therein the sale of automobile accessories and for no other purpose," and the further stipulation that "the lessee was not to make any alterations, additions or improvements in said premises, without the consent of the lessor in writing first had and obtained." The lease contained the usual stipulations for forfeiture in the case of nonpayment of rent, and left it optional with the lessor to declare the lease forfeited and the term ended for a breach of the other conditions, reciting that it was mutually covenanted and agreed between the parties that a waiver by the lessee of any covenant, agreement, stipulation or condition of the lease should not be construed as a waiver of any succeeding breach of the same covenant.

As originally constructed, the room had a balcony midway between the floor and ceiling, extending from the front of the room towards the back for about three-fourths of the distance, and for the full width of the room, save about nine feet, reached by a stairway leading upwards from the floor. While there is a dispute in the evidence concerning the fact, it was overwhelmingly proven that, at the time the negotiations were in progress which led up to the lease, the respondent stated to the agent of the appellant, who negotiated on its behalf, that he desired to use the space above the balcony as a living apartment for himself and his family, and desired some additions made thereto to make the place more suitable for that purpose. The agent agreed that these additions might be made, agreeing further to pay the bills for the materials necessary to make the additions. When the written lease was pre-

sented for signature, it was noticed by the respondent
that it limited the use of the room to the sale of auto-
mobile accessories and contained no provision for the
addition requested. Payment of a check theretofore
given for the first month's rent was countermanded
and the matter taken up with the agent. He refused to
make any change in the lease as written, but assured
him that the limitation in the lease with regard to the
purposes for which the room might be used was mere
"matter of form," and that he would not be molested
if he used the balcony for living purposes, and at the
same time gave the respondent a writing, consenting to
the additions to the balcony floor and agreeing in the
writing to furnish the materials necessary for that
purpose. The respondent executed the lease and later
took possession of the room, moving his stock of mer-
chandise to the lower floor and his household goods to
the balcony, and continued to use the balcony as a liv-
ing room during the remainder of the time the lease
was in force.

The terms of the lease just mentioned ran from
March 1, 1917, to March 1, 1918, at a rental, payable
monthly in advance, of $30 per month. On February
1, 1918, the respondent sent for the agent of the appel-
lant, with whom he had negotiated the lease, and made
known to him his desire to continue in the occupation
of the room for an additional term. He also made
known to the agent his desire for further additions to
the balcony floor in order to make it more suitable for
living purposes; he desired to extend it so as to include
and cover the entire space, cut a door in the wall to a
stairway which led up from the outside of the building
to certain apartments on the floor above, remove the
stairway entirely which led from the storeroom floor
to the balcony floor, and to remove a lavatory, which
was constructed in a corner of the storeroom, to the

balcony floor, and install in connection therewith a bath tub. The discussion concerning these changes was had with the agent while on the balcony floor, which the respondent was then using for living apartments. It was also stated to the agent that the respondent could not afford to go to the expense necessary to make the changes unless he could have a lease of the room for two years from the expiration of his present lease. The agent consented to the changes, and on the next day caused his principal, the appellant, to execute a new lease to the respondent for a term extending from March 1, 1918, to March 1, 1920, at a monthly rental of $35 per month for the first year of the term, and $42.50 per month for the second year. This lease, like the former one, contained the recital that the lessee should use the premises for the sale of automobile accessories, and for no other purpose, and contained the same provisions for a forfeiture in case of a breach of any of its covenants as was contained in the original lease.

The lease was executed by both parties in triplicate, a copy being delivered to the respondent, who signed an indorsement on one of the copies retained by the appellant, which recited that the respondent had received and accepted a duplicate of the lease and had no understanding, verbal or otherwise, differing from it. At the time of the delivery of the lease, a letter was delivered therewith, granting the respondent leave to cut the door mentioned, subject to the approval of the owner of the building, and on condition that the wall should be replaced, if requested, at the cost of the respondent, on the termination of the tenancy. Nothing was said in the letter concerning the additions to the balcony floor, the removal of the lavatory, the addition of a bath tub, or the use of the space above the balcony floor for living apartments. After the execution of the lease, the respondent obtained the consent of the owner

of the building to cut the door mentioned. He was obligated also to obtain the consent of the city authorities of the city of Seattle to make this change, as well as to make the additions to the balcony floor, the same not being in the original permit to construct the building, which he did at the expenditure of considerable time and money. After these preliminaries were settled, the respondent made the changes as contemplated, at an expense to himself, as the court found, "in the neighborhood of $400."

On July 29, 1918, the appellant, claiming to have discovered for the first time that changes had been made in the leased storeroom in addition to those authorized by the letters delivered with the leases, and that the premises were being used in part for living rooms, wrote a letter to the respondent, calling attention to these changes and declaring a forfeiture of the lease. The letter stated further, however, that the appellant did not wish to be arbitrary, and that, if the respondent so desired, a new lease could be entered into in keeping with the changed conditions. The respondent disregarded the notice contained in the letter, and later the present action was begun under the statutes of forcible entry and detainer to oust him from the premises. At the trial, on the foregoing facts appearing, the court held the appellant estopped to declare a forfeiture of the lease, and entered judgment to the effect that the appellant take nothing by its action. This appeal is from the judgment so entered.

It is the appellant's first contention that the defense interposed, and that which the trial court found controlling, is an equitable defense and is not available to a defendant in this form of action. Cases from this court are cited where the rule is stated in language as broad as the contention implies, and it is on these cases that the appellant relies to maintain its position.

But while the rule as thus announced was applicable to the facts of the particular cases then under consideration, we think it too broad as a rule of uniform application. The statutes relating to forcible entry and detainer define many acts against which the summary remedy therein provided for is applicable; acts which differ widely in their nature and effect. To illustrate: It declares a person guilty of forcible detainer who, in the nighttime, or during the absence of the occupant of real property, enters therein, and who, after demand of the occupant, refuses to depart therefrom; and it declares a tenant guilty of unlawful detainer who continues in possession of leased property after a breach of the covenants of his lease, and who refuses, on demand of the landlord, to comply with the covenants within a stated time. Manifestly there is in these acts a widely different degree of moral turpitude. In the first, it is but just to say that the guilty party, however well founded his right of entry or his claim of right of possession may be, shall let go his hold before he is permitted to try out his claim of right. He is not thereby deprived of his right to such a trial, and can usually lose nothing more than the rental value of the property while his rights are in process of litigation. But it is not so in the other case. The possession of the tenant is originally lawful, and is so presumed until the contrary appears. If wrongfully ousted, he has usually no adequate remedy, since his remedy is in damages, which may fail for want of a proper measure, or for want of ability on the part of the landlord to respond. More than this, he should not be ousted except for a wrongful breach of the conditions; and, clearly, if facts exist which would excuse the breach, whether these facts present a defense, legal or equitable, he ought to be permitted to show them before an actual ouster. We cannot conclude, therefore, that a

defendant in an unlawful detainer action can in no case present an equitable defense; his right to do so, we think, must depend upon the acts which give rise to the action. If he acquires possession lawfully and it is sought to oust him because of his subsequent acts, he may defend by setting up any defense which will justify his acts. On the other hand, if his possession was wrongfully acquired, or if acquired under circumstances where to permit him to hold possession would violate the express provisions of the statute, he may not defend by showing right of possession, either legal or equitable.

But this court has not uniformly applied the rule for which the appellant contends. In *Brown v. Baruch,* 24 Wash. 572, 64 Pac. 789, an action of forcible detainer, the defendant pleaded facts by way of an equitable estoppel, and this court sustained a judgment in his favor based on such facts, notwithstanding the objection of the plaintiff that such a defense was not available because of the nature of the action. Other instances where this principle is recognized, although not directly presented, can be found in the following cases: *Teater v. King,* 35 Wash. 138, 76 Pac. 688; *Watkins v. Balch,* 41 Wash. 310, 83 Pac. 321, 3 L. R. A. (N. S.) 852; *Northcraft v. Blumauer,* 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071; *Hutchinson Investment Co. v. Van Nostern,* 99 Wash. 549, 170 Pac. 121.

The next contention is that the evidence by which the estoppel pleaded was sought to be established violated the parol evidence rule. It is true, undoubtedly, if the right of the respondent to make the alterations in the room and use it for purposes other than those stipulated in the written leases rested alone on the agreement he had with the agent, the evidence concerning the agreement could not be considered, since the agreement was prior to, or contemporaneous with, the sign-

ing of the written lease, and, under the parol evidence rule, is presumed to have been merged therein. But the evidence here goes much farther than this; it not only shows the parol agreement, but it shows a subsequent acting on the agreement by one of the parties, to his detriment if it is not to be recognized, under circumstances charging the other party with knowledge of his acting, and under circumstances making it the duty of the other party to speak if recognition of the agreement was not intended. While the rule known as the parol evidence rule is usually referred to as a rule of evidence, it is more properly a rule of substantive law, since it is a rule of substantive law and not any rule relating to the admissibility of evidence that gives the rule effect. In other words, it is the law and not a rule of evidence that conclusively presumes the finality of written agreements. When, therefore, the acts and conduct of the parties to a written agreement, occurring subsequent thereto, show an addition to or a modification of a written agreement, or the acts of one party, acquiesced in by the other, show such modification, no rule of evidence precludes a showing of the entire transaction, even if a part thereof is a parol contemporaneous agreement adding to, varying, or modifying a written agreement. The parol evidence rule is intended to prevent, not to promote frauds, and it would be a fraud to allow a party to a written agreement to enforce it as written when he has agreed not to do so, where the other, on the faith of the agreement, has acted thereon to his detriment.

The remaining question is whether the facts are sufficient to justify the judgment entered. We think they are, on the principle of estoppel. As was said by Judge Dunbar, in *Carruthers v. Whitney,* 56 Wash. 327, 105 Pac. 831, 134 Am. St. 1114:

"Estoppel is an equitable proceeding, or speaking more accurately perhaps, it is the equitable result of a wrongful proceeding or act, a reliance upon which would, in the absence of an estoppel, work an injustice to an innocent person. At the common law estoppel was founded on deeds and records of courts, but estoppel in equity is estoppel *in pais*. The principle now applies because it has been found that the common law rule was too narrow and inadequate for the attainment of justice under the multiplied transactions of modern times, and hence the equitable estoppel of the present day. The well-understood idea of equitable estoppel is that, where a person wrongfully or negligently by his acts or representations causes another who has a right to rely upon such acts or representations to change his condition for the worse, the party making such representations shall not be allowed to plead their falsity for his own advantage."

So Judge Morris in the case of *Rogers v. Reynolds,* 95 Wash. 470, 164 Pac. 80:

"Neither is it necessary to point to any special word or act on the part of those now represented by appellant to justify an estoppel. For an estoppel will be created by silence, where it operates as a fraud, as effectually as by spoken word or overt act. Estoppel is a doctrine enforceable by the courts whenever the equities of the particular case demand it. Sometimes it may be predicated upon word or action, sometimes upon the lack of them; but whatever its origin, it is invoked in the interest of equity and good conscience."

The facts of the present case bring it within these principles. The respondent was permitted to occupy the room in contravention of the terms of the written lease during the entire period of his first tenancy, without remonstrance or objection of any kind on the part of the appellant. He was so occupying it at the time the lease was renewed, and express consent was then given him not only to continue to do so, but to make alterations thought by him to make the place more

suitable for this purpose. · On the faith of the promise he went to the trouble of getting a permit from the city authorities to make the alterations, and spent a large sum of money in making them. In spite of their denials, we think the facts justify the conclusion that the appellant's principal officers had knowledge of these. facts. But, if they did not, the agent had such knowledge, and the appellant is chargeable therewith. To permit it now to claim a forfeiture of the conditions of the lease would be to permit it to take advantage of its own wrong and perpetrate a fraud upon the respondent. This it should not be permitted to do.

The judgment is affirmed.

Holcomb, C. J., Parker, Mount, and Bridges, JJ., concur.