[No. 30620. Department One. March 7, 1949.]

R. H. GOLDEN, *Appellant*, v. H. A. MOUNT *et al.*,
*Respondents and Cross-appellants*.

H. A. MOUNT *et al.*, *Respondents and Cross-appellants*,
v. R. H. GOLDEN *et al.*, *Appellants*.[1]

[1]Reported in 203 P. (2d) 667.

654

*Ennis & Herman, Richard S. Munter,* and *H. E. T. Herman,* for appellants.

*Cameron Sherwood* and *Herman H. Hahner,* for respondents and cross-appellants.

BEALS, J.—At all times herein mentioned, Dr. H. A. Mount and Olive L. Mount, his wife, were the owners of a valuable tract of wheat lands in Walla Walla county, something over three thousand acres in extent. Their son, Hubert T. Mount, had recently been released from war service and desired to learn something of farming operations.

In January, 1946, the farm was held under lease by one Cockburn, who had held the land for nine years under a written lease and extensions thereof, and had notified his

lessors that he would surrender possession of the farm upon termination of his lease, after completing the harvest of the 1946 crop.

R. H. Golden, who, for some years, had been engaged in wheat farming, was the owner of a considerable amount of farm machinery, and entered into negotiations with Dr. Mount with the view of leasing the latter's wheat lands upon the termination of Cockburn's tenancy. February 13, 1946, a lease was signed by the Mounts and Golden, whereby the land was leased to the latter for the term "ending on the 20th day of September, 1947." The lease contained no provision for any renewal or extension thereof nor for any holding over by the lessee, and was expressly subject to the right of the prior tenant to harvest the 1946 crop.

A local bank, which was financing Golden, holding chattel and crop mortgages from him, March 1, 1946, procured from the lessors a writing granting the lessee the right "notwithstanding any condition stated in the lease," to retain possession of the property until he should have an opportunity to harvest his first crop thereon, at the proper season in 1947.

July 12, 1947, the Mounts served upon Golden a notice requiring him to vacate the premises, September 20, 1947, the date fixed in the lease as the termination thereof. This notice was given pursuant to Rem. Rev. Stat., § 813 [P.P.C. § 55-7], relating to leases of agricultural lands.

Controversies having arisen between the lessors and the lessee Golden, the latter, September 14, 1947, verified a complaint, naming Dr. and Mrs. Mount as defendants, setting forth the written lease above referred to, and alleging that, prior to the making of the lease and thereafter, the lessors had orally promised and agreed with the plaintiff Golden that he should have possession of the lands as tenant during the crop years of 1948 and 1949, in addition to the term specified in the lease, and that these oral promises had later been confirmed in writing by his lessors.

By an amended complaint, verified by Golden, September 27, 1947, the allegations of the original complaint were

somewhat amplified, the plaintiff praying that his lessors be required to specifically perform their agreement to lease to him the land for the crop years of 1948 and 1949, and that they be restrained, during that period, from interfering with Golden's possession of the land as their tenant.

The original complaint and the amended complaint were filed in the office of the clerk of the superior court, September 27, 1947, the cause receiving the clerk's file number 34074. The defendants Mount answered the amended complaint denying the material allegations thereof, and, by way of a cross-complaint, prayed that they be granted judgment against the plaintiff for enumerated items of alleged damage, and that plaintiff's action be dismissed. The issues were later completed by the filing of a reply by plaintiff denying the affirmative allegations of the cross-complaint.

September 24, 1947, H. A. Mount verified and filed a complaint and summons in an action for unlawful detainer, by himself and his wife as plaintiffs, against R. H. and Delphine Golden, as defendants, the complaint alleging the execution of the lease between the parties above referred to, and also alleging that the defendants had unlawfully detained the premises from plaintiffs, and that, under the lease, plaintiffs were indebted to the defendants in certain stated amounts, and that the defendants were indebted to the plaintiffs on account of other items as alleged in the complaint, the plaintiffs praying for immediate restitution of the premises, and for judgment for certain items of indebtedness which the complaint alleged were due the plaintiffs from the defendants.

By an order dated September 24, 1947, the court ordered that a writ of restitution issue in favor of the plaintiffs, and that the plaintiffs file a bond in the sum of fifty thousand dollars in support of the writ. The plaintiffs filed such a bond, but the service of the writ was suspended by the filing of a counterbond by the defendants Golden after proceedings had in cause 34074.

Upon the filing of the complaint in the case of Mount v. Golden, the action received the clerk's file number 34068. An amended complaint in this action was filed, October 22,

1947, in which the plaintiffs also prayed for a writ of restitution, after repeating the allegations of their ownership of the property and their lease to Golden and the expiration thereof, as set forth in their original complaint.

The plaintiffs then alleged that they were indebted to Golden, according to the terms of the lease, in the amount of $3,256 for summer-fallow. They also alleged their tender to Golden of this amount and a further sum due Golden for grain insurance, and that they had been served with a writ of garnishment in an action entitled Hubert T. Mount v. R. H. Golden, being cause number 34066, in the superior court for Walla Walla county.

The plaintiffs further alleged that the rental value of the farm, and the reasonable value of the annual crop rental, was the sum of three thousand dollars per month for every month the defendants should unlawfully detain the lands from the plaintiffs after the expiration of the lease. They further alleged that, because of the acts of Golden, they had been required to employ attorneys at an expense of two thousand dollars.

The plaintiffs prayed for judgment for restitution of the premises, for the sum of three thousand dollars for each month, after September 20, 1947, that the defendants should continue in unlawful possession of the property, that the amount of the rent and damages be doubled, and that they have judgment for two thousand dollars on account of their attorneys' fees. Plaintiffs also asked for general relief.

The defendants filed their answer to the amended complaint, denying the material allegations thereof, and, by way of a cross-complaint, alleged that the plaintiffs had agreed with the defendants that the latter should have possession of the demised farm lands for the crop years of 1948 and 1949, upon the terms set forth in the original lease; and that, in reliance upon this agreement, the defendants had expended a large sum of money upon the property preparatory to farming the same for the entire term during which they contended they were entitled to maintain possession of the land. The defendants prayed that the plaintiffs' action be dismissed and that the plain-

tiffs be required to specifically perform their alleged oral agreement to lease the lands for two additional years, that the defendants recover damages against the plaintiffs, and that they have such equitable relief as should be deemed appropriate.

The issues in this action were also joined and the two actions were, without objection, by order of the court, consolidated for purposes of trial.

From the foregoing statement, it appears that the controversies between the parties concerned were based largely upon divergent views as to the period for which the lands had been leased by the Mounts to Golden, the former contending that the lease was for one crop year only, the latter contending that he, Golden, was entitled, pursuant to an alleged agreement between the parties, to occupy the lands for three crop years. Both of the two proceedings above referred to presented this basic question. Some incidental controversies were also presented.

The consolidated actions were tried to the court as proceedings in equity. The late Judge George O. Beardsley presided, as visiting judge.

After the close of the trial, the court prepared a comprehensive written memorandum decision, covering both proceedings, which was filed in each cause. This decision was thereafter discussed before the court by counsel for both parties and, March 6, 1948, the court signed a decree in each case. Each decree specifically referred to the memorandum decision and made it part of the decree by reference thereto. The trial court made no formal findings of fact; the memorandum opinion and the discussion between the court and counsel for the respective parties above referred to, clearly disclose the court's views of the evidence.

The facts that a decree was entered in each cause, from each of which an appeal and a cross-appeal have been prosecuted, have resulted in an extremely complex situation before this court.

By the decree in cause 34074 (Golden v. Mount), the trial court dismissed Golden's amended complaint with prejudice, dissolved the temporary injunction which had been

entered at Golden's instance, restraining Mount and the sheriff of Walla Walla county from dispossessing Golden from the property and restoring possession of the property to Mount, awarded Mount judgment against Golden for $1,066.40 upon the claim pleaded in Mount's cross-complaint, awarded costs to Mount, and fixed the amount of the additional supersedeas bond to be filed by Golden, if he should appeal from the decree and maintain possession of the property, in the amount of fifty thousand dollars.

From the decree entered in the case of Golden v. Mount, cause 34074, the plaintiff Golden has appealed, and the defendants Mount have prosecuted a cross-appeal.

By the decree entered in cause 34068, it was adjudged that the defendants Golden were guilty of unlawful detention of the premises in question, and the plaintiffs Mount were restored to the immediate possession thereof. Plaintiffs were also granted judgment for various items which will be hereinafter discussed. The sheriff of Walla Walla county was ordered to forthwith serve upon the defendants Golden the writ of restitution theretofore issued in the cause and place the plaintiffs Mount in possession of the premises. The defendants Golden were granted judgment against the plaintiffs for certain sums set forth in the decree. Save as to items allowed by the court, the cross-complaint of the defendants Golden was dismissed, with prejudice.

In the case of Mount v. Golden, cause 34068, the defendants have appealed and the plaintiffs Mount have prosecuted a cross-appeal.

Thereafter, the court fixed the amount of supersedeas bonds to be filed in the two cases and also signed an order fixing at fifty thousand dollars the amount of the additional bond to be furnished by appellant Golden, in cause 34074, should the appellant desire to continue in force a temporary injunction which the court had issued *pendente lite,* restraining the defendants Mount, in that action, from ousting Golden from his possession of the farm lands.

The court also continued in effect the bonds which had been filed in support of the temporary injunction procured

by Golden, until the conditions and obligations thereof should have been fulfilled.

Thereafter, the appellant Golden filed, in cause 34074, a bond in the sum of fifty thousand dollars, which bond was approved by the court. It appears that Golden is still in possession of the farm lands by virtue of the orders of the trial court above mentioned.

The appellants Golden make the following assignments of error upon their appeals in the two actions:

"1. The trial court erred in its refusal to grant the plaintiff in cause 34074 judgment requiring the defendants to specifically perform the oral agreement to extend plaintiff's lease for a period of two years following the expiration of the term fixed by the written lease in accordance with the terms of the oral agreement.

"2. The trial court erred in refusing to grant the plaintiff in cause 34074 a permanent injunction enjoining the defendants from interfering with or disturbing the plaintiff in his peaceable possession of the farm lands in question for the period of two years following the expiration of the term of the written lease.

"3. The trial court erred in entering judgment in cause 34074 directing that the Sheriff of Walla Walla County forthwith serve and execute the writ of restitution issued in cause 34068.

"4. The trial court erred in entering judgment in cause 34074 requiring the plaintiff to pay the defendants the sum of $1,066.40 for the use of the premises for cattle pasturage from September 21, 1947, to November 1, 1947.

"5. The trial court erred in granting judgment for the defendants in cause 34074 and in denying plaintiff the relief to which he was entitled.

"6. The trial court erred in granting judgment to the plaintiffs in cause 34068 adjudicating the defendants guilty of unlawful detention of the farm land, which is the subject matter of this litigation, and restoring the possession thereof to the plaintiffs in said cause 34068.

"7. The trial court erred in entering judgment in cause 34068 directing that the Sheriff of Walla Walla County forthwith serve and execute the writ of restitution issued in said cause 34068.

"8. The trial court erred in granting judgment for the plaintiffs in cause 34068 and in denying the defendants in

said cause, 34068, the full relief to which they were entitled."

Respondents Mount make the following assignments of error in connection with their cross-appeal from the decree in cause 34068 (Mount against Golden) and the additional assignments of error in connection with their cross-appeal in cause 34074, Golden v. Mount:

"1. The court erred in failing to award unto respondents the entire crop, whether severed or unsevered, without offset except for agreed allowances for summer fallow work performed prior to September 20, 1947.

"2. The court erred in granting judgment in favor of appellants for cost of seed, treating seed and labor performed subsequent to September 20, 1947.

"A. The Court erred in fixing damages in favor of respondents.

"(1) By failing to allow $533.60 for pasturage for period antedating the expiration date of the lease.

"(2) By failing to double the allowance of $1066.40 for pasturage during the period subsequent to expiration date of the lease as required by Section 817, R.R.S.

"(3) By failing to allow $176.46, or any sum, for wheat harvested and not delivered."

The parties have presented the appeals by consolidated briefs.

In this opinion we shall refer to respondents and cross-appellants, H. A. and Olive L. Mount, as Mount, and appellants R. H. and Delphine Golden, as Golden, except as otherwise designated.

We shall refer to the action instituted by Mount against Golden as cause 34068, and to the action instituted by R. H. Golden, as plaintiff, against Dr. and Mrs. Mount, as cause 34074.

We shall first discuss the principal question presented on this appeal, namely, appellant Golden's contention that the trial court erred in holding that the evidence was insufficient to support a decree in his favor, declaring that he was entitled to hold possession of the farm property for an additional two years after the expiration of the term provided for in the written lease, under an oral two-year lease,

or extension of the written lease, agreed upon, as Golden contends, between his lessors and himself, and which had become effective because of part performance and acts done in reliance thereon by Golden.

Cause 34074 was called first, Mr. Golden having been the first witness to testify.

B. J. Lehrer, an attorney practicing in Walla Walla, represented Mount at the time of these negotiations, and, called by Golden as a witness, testified that, at first, he was under the impression that the land would be leased by Mount to Golden for three crop years. It appears beyond question, however, that, prior to the time any proposed lease was submitted to Golden, Mount had definitely instructed Mr. Lehrer to prepare the lease for one crop year only. A lease was prepared, leasing the land for one crop year, and was signed by Dr. and Mrs. Mount, February 12, 1946. The lessors did not acknowledge the lease that day, as the certificate of acknowledgment, by Mr. Lehrer as notary public, is dated February 13, 1946.

This lease was at once submitted to Mr. Golden in the absence of Dr. and Mrs. Mount, and in the presence of Hubert Mount and Mr. Lehrer. Golden again expressed his desire to have a three-year lease, and the matter was discussed between Golden, Hubert, and Mr. Lehrer. Concerning the conversation among the three, Golden testified in part as follows:

"A. It was evidently prepared by Mr. Lehrer and signed by the Mounts, not in my presence. I was called to the office of Mr. Lehrer and asked to sign the lease. Q. Who called you to the office? A. I think Mr. Lehrer called me and Hubert was there when I arrived. Q. Was he there when you got there? A. Yes. The lease had been drafted and signed by the Mounts. Q. Did you read the lease? A. I did. Q. What was said about the terms of the lease? A. It was for one year and I objected to it. Q. What did you say? A. I said to Mr. Lehrer and Hubert that I had been talking about a three year lease and it was understood that it was to be for a three year term and that I couldn't afford to sign a lease for one year. Q. What was said? A. Mr. Lehrer suggested that I call upon the doctor and put the question up to him. Q. What did Hubert say about that? A. Hubert

said his father wasn't feeling good and I then suggested that Hubert take the lease to his father and ask him for me to extend the lease to three years? Q. Did you sign the lease that day? A. No. Q. Was that in the morning? A. It could have been. I believe it was. Q. Did Hubert take the lease? A. Yes. Q. When did you next see Hubert? A. I believe it was the next day. We met again in Mr. Lehrer's office. Q. Who was present then? A. Hubert, Mr. Lehrer and myself. Q. What was said about the lease? A. His father didn't want to go to the expense of re-writing the lease and he wasn't well. He pointed to the Cockburn lease and that he had held over and I could hold over and not re-write the lease. That I could be assured I would have it. Q. How long had Mr. Cockburn been on the place under his lease? A. Nine years, I believe. . . .

"A. I was referred to the Cockburn lease and told by Mr. Lehrer that Mr. Cockburn had had a three year lease and had held over for nine years and it was legal to hold over on a lease with the consent of every one. Q. Did you sign the lease at that time? A. We talked about it quite a little bit and Hubert assured me I would have it for three years and I finally signed it."

Mr. Lehrer stated that he had no clear recollection of what was said at the time referred to. Hubert T. Mount, called as a witness by respondents, testified at considerable length concerning his relations with Golden. He testified that he was present in Mr. Lehrer's office when Golden examined the lease, and stated that Golden then made no objection to the terms of the lease as it was written. In any event, it nowhere appears that Hubert Mount had any authority whatever to bind his parents by agreements or statements, and the record contains no evidence that, at the time the lease was signed and acknowledged, there was any contemporaneous agreement between the lessors and the lessee to the effect that the lease should cover, or be extended to cover, the crop years of 1948 and 1949.

Golden signed the lease, and the lessors and lessee formally acknowledged the same before Mr. Lehrer, as notary public, February 13, 1946. On cross-examination of Mr. Golden, the following occurred:

"Q. I believe you testified you requested originally a three year lease? A. Yes, sir. Q. And signed a one year lease?

A. Yes, sir. Q. You knew it was a one year lease? A. Yes, sir. Q. I will ask you if Dr. Mount didn't tell you that he was putting you on trial to determine what your ability as a farmer would be? A. I don't remember that. Q. You don't remember that? A. No. Q. It might have been so reported by Dr. Mount? A. It could have been. Q. You entered into possession with the understanding the lease would terminate on the 20th of September, 1947? A. I entered into it with the understanding I would have it for three years."

Appellants call attention to the fact that the lease, as signed, contains some language which would be appropriate to a lease for more than one year, such as:

"In the event that under the terms of this lease there shall come a year in which said Lessee is to farm only a portion of said land and is not to summerfallow the land for the ensuing crop, . . ."

Again, referring to the delivery of the rental share of the crop, the lease states, "prior to the 20th day of September of each year the crop grown on said premises for said year," and again, "first crop." In other portions of the lease the phrase "each year" appears, and "for each and every year for the duration thereof," referring to the lease.

The entire lease is typewritten, save the dates of the month, which, in the lease and the acknowledgment, were left blank and added by pen.

It appears that, in preparing the lease, Mr. Lehrer had before him the prior lease between Mount and Cockburn, which was in form a lease for three years, and used that lease as a form in drafting the lease to Golden.

Some additional paragraphs, not included in the Cockburn lease, were added by Mr. Lehrer to the lease prepared for execution by Mount and Golden. The fact that some paragraphs in this lease contain language inappropriate to a lease for one year is unimportant in view of Golden's testimony that, when he signed this lease, he knew definitely that it was a lease for one crop year only.

March 1, 1946, Dr. and Mrs. Mount signed a letter prepared by the bank (Mount exhibit I) directed to the Baker-

Boyer National Bank, Walla Walla (the bank that was advancing money to Golden), reading as follows:
"Gentlemen:

"We understand that you are about to arrange financing for R. H. Golden in connection with his farming operations on the lands in Walla Walla County which we leased to him by lease dated Feb. 12, 1946.

"Notwithstanding any conditions stated in said lease, we hereby assure you and R. H. Golden that he will be permitted to retain possession of the property as tenant until he has had opportunity to harvest his first crop thereon at the proper season in 1947.

"This assurance is based upon the condition that he performs his duties and obligations as tenant, and otherwise, as set forth in said lease.

"Yours very truly
(Signed) "H. A. Mount
(Signed) "Olive L. Mount"

If, at the date of this letter, Golden had a lease, or any valid arrangement pursuant to which he would be in possession of the farm as tenant for three crop years, it would not have been necessary to procure a writing from Mount granting him permission to retain possession of the property until he could complete the harvest of his 1947 crop. While the letter refers to this as his "first crop," this, at most, indicates no more than that at that date it was considered possible that he, by some subsequent arrangement, might maintain his tenancy of the farm for another year. Cockburn, the previous tenant, had held over for several years.

As stated, in substance, by the trial court in its memorandum decision, the parties entered into a formal written contract of lease, and all prior negotiations between the parties were merged in that document, which both parties signed and acknowledged, being fully acquainted with its terms and conditions. The trial court correctly held that, upon the execution, acknowledgment, and delivery of this lease, Golden became Mount's tenant for a term ending September 20, 1947, subject, of course, to any necessary extension pursuant to Mount's letter to the bank, bearing date March 1, 1947, *supra.*

To support Golden's claim that, because of an oral lease or extension of the written lease, he was entitled to hold the property for two additional years, it was ·encumbent upon Golden to introduce evidence which, by a clear preponderance thereof, showed that he was entitled to hold the land as tenant for some additional time, and that he also introduce evidence to show such part performance on his part of this oral contract as would support a judgment in his favor, establishing his right to possession of the property as tenant for any additional period during which he claimed such right.

Golden claimed that Mount had orally agreed to such an extension of the lease. Saye as herein set forth, no written evidence was introduced.

In February, 1947, Golden spoke to Mr. W. D. Shuham (who was called by Mount as a witness), vice-president of the Baker-Boyer National Bank, which bank was financing Golden's farming operations, for the purpose of procuring advances with which to pay for the summer-fallowing to be accomplished on the farm. At that time, Golden was indebted to the bank for a large sum, secured by chattel mortgages on his farm machinery and equipment and upon the crop to be grown for harvest at the end of the farm year of 1947. Golden told Mr. Shuham that he planned to accomplish the summer-fallow work to be done in 1947, for the 1948 crop, by disking instead of by plowing, whereupon Mr. Shuham, after examining a copy of the lease, which was in the bank's file, observed that the lease provided that the fallowing be by plowing, and that any change in the program should be approved by Mount. Mr. Shuham testified that he also informed Golden that, under the lease, the latter had merely a tenancy for one crop year, and that this matter should be discussed with Mount. Golden testified that he went to Dr. Mount's home, where the matter was discussed with Dr. and Mrs. Mount, in the presence of Hubert Mount. Golden explained that he was asking the bank for a loan, and that the bank wanted to be assured that

Golden was going to have this crop. Golden later explained that he was referring to the 1948 and 1949 farm crops.

"Q. What did Dr. Mount say, if anything, about your disking? A. It was agreeable to Dr. Mount. Q. Did Hubert have anything to say at that meeting? A. It was agreeable to him. We had considerable conversation and I was having it for three years. Q. Was Mrs. Mount present? A. Yes. She went to the basement two or three times. Q. Did you repeat what Mr. Shuham said? A. Yes. I told them the lease called for one year and the bank didn't feel like extending the money unless I would be assured that I would have the 1948 crop. Q. What did Dr. Mount say to you about that? A. He was agreeable about the disking and told me not to worry. THE COURT: Just what did he say? A. Well, he said I was going to be there, Judge, not to worry. THE COURT: He said not to worry. I don't know what you mean. He might have had something else in mind. A. He said I would have the 1948 crop. THE COURT: The 1948 and 1949 crop? A. This was the 1948 crop. THE COURT: He said you could have the 1948 crop? A. Yes. Hubert said I could have the 1948 and 1949 crop. Q. Did Dr. Mount later at that meeting refer to the 1949 crop? A. Hubert carried on the conversation about the 1948-49 crop. I couldn't say definitely whether Doctor referred to the 1949 crop or not."

It should here be noted that Dr. and Mrs. Mount and Hubert Mount testified that, during the conversation with Golden referred to, no such statements were made concerning the 1948 crop, as testified by Golden. Mr. Shuham testified that, when Golden again spoke to him concerning the loan which he desired from the bank, "He reported that he thought he would have an extension." Mr. Shuham further testified that, at this time (January 25, 1947, or approximately that date), the bank's file indicated that "there was doubt of the tenant's securing an extension of the present lease," and that it was important to the bank to know Golden's status as Mount's tenant. The witness testified that Dr. Mount had previously informed him that he was not satisfied with Golden's handling of the crop during the previous fall, and that the bank felt it might be necessary to impound the money that Golden would receive from Mount for the summer-fallow work. The witness also ex-

plained that the bank's mortgage from Golden covered the 1947 and 1948 crops. The latter were being included for the purpose of obtaining security upon the summer fallow, such being the common practice. Continuing, Mr. Shuham testified:

"Q. Did you tell Mr. Golden that you had a confirmation in writing from the Mounts assuring him of an additional year to two on the place? A. Definitely I did not. Q. Did you at any time have in your possession, or the bank's possession, any written authorization from Dr. or Mrs. Mount or either of them for any additional time beyond the 20th of September? A. No, I did not. Q. Explain this then? A. I thought from confusion a letter was obtained from Dr. Mount at the inception of this transaction. That is the only letter or correspondence of any kind from Dr. or Mrs. Mount in regard to this matter. Is that clear? Q. Showing you Mount Exhibit I, I will ask you if that is the letter to which you refer? A. That is the letter. Q. That is the letter. Now, you had this letter in your loan file? A. That was attached to Mr. Golden's copy of the lease, I believe. Q. In Mr. Golden's file? A. The collateral matter. Q. Used to assure you he would have that crop? A. Yes. THE COURT: Inquire into the language in that letter. Q. This letter was prepared by the bank? A. I presume it was. Q. I notice from the language in the second paragraph 'until he has had opportunity to harvest his first crop thereon at the proper season in 1947'. Do you know whether that referred to an additional crop? A. It was more or less mutually understood if Bob's operation of the farm was satisfactory that favorable consideration would be given to the extension to the initial transaction. Q. Dr. and Mrs. Mount never authorized you to assure Mr. Golden of any additional terms? A. No, they did not. Q. Did the Baker Boyer National Bank or you ever receive any oral or written authorization from Dr. and Mrs. Mount or either of them to extend the terms of this lease? A. No. Q. Did you ever act as agent for that or any similar purpose? A. Definitely not. . . . Q. Did you ever have any understanding that Dr. or Mrs. Mount relied on you for the leasing or re-leasing of the farm? A. No. Q. Did you ever have any other paper? A. No. Q. At the bank? A. No. Q. Did you ever recognize their son Hubert for that purpose. A. What was the question? A. Did you ever recognize Hubert as having authority from his parents to lease or rent the land? A. No. I didn't

think so. Q. Who did you deal with? A. Dr. and Mrs. Mount. Q. Can you testify that Dr. and Mrs. Mount transacted their own business? A. Yes, they did. Q. Is Doctor a good business man? A. Above the average. Q. Did you ever tell Robert H. Golden you would keep in the bank a written document that he had additional time? A. Sir? Q. Did you tell Robert H. Golden in January or February '47 that you had written authorization from them or either of them extending this lease for one or two years and you would keep it in the bank? A. No, we did not."

Golden testified as to conversations with Mr. Shuham and with Dr. and Mrs. Mount and their son Hubert, in which he stated that he told them that he proposed to disk the land instead of plowing; that, due to the heavy stubble, it would be necessary to disk twice, which would be twice as expensive as plowing. Golden testified that Dr. and Mrs. Mount again promised and agreed that he could continue to hold the property after the expiration of the term fixed by the written lease and that Golden could assure Mr. Shuham, on behalf of the bank, that Golden would have the 1948 crop.

Golden introduced in evidence certain chattel mortgages which he had executed in favor of the bank, the first bearing date March 1, 1946, whereby he mortgaged to the bank, to secure payment of the sum of eight thousand dollars, a considerable quantity of farm machinery, and all of his summer fallow to be made in the season of 1946, and his two-thirds interest in "the crop to be grown and harvested therefrom in the season of 1947." August 30, 1946, Golden executed a mortgage to the bank covering his farm equipment and his interest in "his crop of grain to be grown and harvested in the season of 1947 and the summer fallow to be made in 1947 and the crop to be grown thereon in 1948." July 6, 1947, he executed another mortgage in the bank's favor, covering, in addition to farm machinery, "his crop of grain to be grown and harvested in the season of 1947 and the summer fallow to be made in 1947 and the crop to be grown thereon in 1948."

Mr. Shuham testified that it was the bank's custom to include in such mortgages any crop which might be grown the following year, regardless of whether that year was covered by any lease in favor of the tenant, in order that the bank might have security upon any crop which the tenant might grow, provided he continued his farming operations under a lease or as a holdover tenant.

For the purposes of this opinion, we assume, without deciding, that Golden's testimony concerning his contention that he was granted an oral lease contemporaneously with the written lease, was not received by the court in violation of the parol evidence rule. *Andersonian Inv. Co. v. Wade,* 108 Wash. 373, 184 Pac. 327; *Hopkins v. Barlin,* 31 Wn. (2d) 260, 196 P. (2d) 347.

■ Such an oral contract as Golden contends existed in his favor must be proven by clear and convincing evidence. *McLean v. Archer, ante* p. 234, 201 P. (2d) 184.

The trial court was definitely of the opinion that Golden failed to establish his case by a fair preponderance of the evidence, and certainly Golden has not established it by the degree of proof required in such cases as this. The court also stated that the evidence failed to support Golden's contention that any "new oral lease, which would be a separate contract as contrasted to the written contract," had been entered into.

Many authorities are cited by the respective parties. It is a well-settled rule that a court of equity will not specifically enforce a parol contract concerning real estate, void because of nonconformance with the statute of frauds, unless the existence of the contract be established by clear and satisfactory proof. In the case of *Vaut v. Vaut,* 118 Wash. 221, 203 Pac. 377, we said:

"While an oral gift of, or agreement concerning an interest in, real estate may be proved under certain circumstances, the courts universally hold that such agreement must be established by clear, convincing, unequivocal and definite testimony."

In the case of *Payn v. Hoge,* 21 Wn. (2d) 32, 149 P. (2d) 939, we said:

"A court of equity will not specifically enforce a parol contract for the conveyance of real estate or an interest therein upon the ground of part performance unless the contract be established to the satisfaction of the court by clear and unequivocal proof, leaving no doubt as to the character, terms, and existence of the contract. [Citing authorities.]"

See, also, *Granquist v. McKean,* 29 Wn. (2d) 440, 187 P. (2d) 623.

The rule is well stated in 37 C. J. S. 824, § 286.

Golden strongly relies upon the case of *Garbrick v. Franz,* 13 Wn. (2d) 427, 125 P. (2d) 295, in which we affirmed a decree of the trial court reforming and enforcing a defective lease. The lease was in writing and purported to lease real estate for a term of five years. The lease was not acknowledged and, therefore, amounted to no more than a lease from month to month. The existence of the lease, however, was not disputed, and this court held that the trial court had correctly ruled that the lease had become valid, it appearing that the lessees had

". . . expended large sums of money in improving the leased property to the end that they might use it for the entire term and that all of the improvements were made with the knowledge and consent of the owners of the real estate."

As the trial court correctly held that, in the case at bar, the evidence introduced failed to prove the existence of any oral lease from Mount to Golden as lessee, the case cited is not here in point.

It is not necessary to discuss questions raised in connection with Golden's contention that he partially performed the oral lease which he contends existed. We agree with the trial court's statement contained in the memorandum decision, that the evidence contained in the record is insufficient to support a decree that, by part performance of and acts done in reliance on, any oral lease such as Golden

contends existed had been taken without the operation of the statute of frauds by any act on the part of Golden.

The trial court heard the testimony and, on several occasions, questioned the witnesses. We hold that, in connection with these phases of the case, the trial court's decision is supported by a clear preponderance of the evidence, and that the court properly determined that cause 34074, instituted by Golden, asking for a decree directing specific performance of the oral lease which Golden contended existed, should be dismissed and the temporary restraining order preventing Mount from dispossessing Golden should be dissolved. Golden's cross-complaint in cause 34068, raising the same question, also falls. Golden's assignments of error, based upon these provisions of the two decrees, are without merit.

By the decree in cause 34074, the court awarded Mount judgment against Golden upon the former's cross-complaint, in the sum of $1,066.40, on account of use of the farm lands by Golden for pasturage of cattle from September 21 to November 1, 1947. Golden has also appealed from this portion of the decree, while Mount has cross-appealed from the decree, contending that he should have been awarded a greater amount on account of the pasturage. It appeared that Golden, by arrangement with one Anderson, permitted the latter to graze cattle on a portion of the farm, Anderson having paid Golden $1,600 for the privilege. Mount contends this amounted to a subletting of the property, prohibited by the lease unless made with Mount's consent. Mount argues that, for the reason stated, he should have been awarded judgment against Golden for the entire amount which Golden received.

■■ Pursuant to section four of the lease, pasturage on the farm was provided for, except over land upon which there were growing crops. The lease having been prepared by Mount as lessor, and for this reason to be interpreted in doubtful cases in favor of the lessee, we hold that the provision of the lease referred to does not apply only to pasturing appellant's cattle. The court did not err in refusing

to award Mount judgment for the money received by Golden for pasturage prior to the expiration of the lease. The court correctly awarded Mount judgment for that portion of the pasturage which was accomplished after the expiration of the lease.

■ Mount now contends that the amount awarded should be doubled pursuant to Rem. Rev. Stat., § 827 [P.P.C. § 55-35], while, in the cross-complaint in cause 34074, Mount prayed merely for damages on account of the pasturage referred to, no double damages being demanded. In such cases, double damages provided by law are not allowed unless specifically claimed in the pleadings. *Peterson v. Crockett*, 158 Wash. 631, 291 Pac. 721. Upon this phase of the case, the decree entered by the trial court was correct, and we find no merit in either of the contentions urged against the same by the parties, respectively.

Finally, in cause 34074, Mount assigns error on the failure of the trial court to enter judgment against Golden for the sum of $176.46 on account of wheat harvested and not delivered to Mount as an appropriate share of the crop due for rent. Examination of the record convinces us that the evidence, introduced by Mount in connection with this phase of the case, does not warrant reversal of the trial court's ruling in connection with this item.

We shall now consider the appeal by Golden and the cross-appeal by Mount in cause 34068, the action in unlawful detainer instituted by Mount and which the trial court correctly held had become an action in equity because of the allegations of Golden's cross-complaint.

The principal contention in this proceeding is the same as that presented in cause 34074, namely, the existence or nonexistence of an oral lease of the farm, in Golden's favor, for an additional two years. We have already considered and determined that question.

By the decree in cause 34068, it was adjudged that Golden was unlawfully withholding the lands in question from Mount, and the decree restored to Mount the immediate

possession of the premises (which are described in the decree). That adjudication in the decree should be affirmed.

By the memorandum decision, the court found that fifty dollars per month was the reasonable rental value of the property for purposes other than farming, and that, pursuant to the statute, this amount should be doubled, Golden having unlawfully retained possession of the land after the expiration of his lease. By the decree, the court awarded Mount judgment against Golden for the sum of $562.64 for double rent and damages from September, 1947, to March 1, 1948, and for the sum of $100 double rent for each month Golden should continue to possess the premises subsequent to the date last mentioned.

■ Under the evidence and the memorandum decision of the court, Golden was guilty of unlawfully detaining the land. Rem. Rev. Stat., § 812 [P.P.C. § 55-5]. This is true, even though appellants retained possession in good faith and were protected in their possession by the temporary injunction issued. *Morris v. Healy Lbr. Co.*, 33 Wash. 451, 74 Pac. 662; *Hinckley v. Casey*, 45 Wash. 430, 88 Pac. 753; *Western Union Telegraph Co. v. Hansen & Rowland Corp.*, 166 F. (2d) 258.

The decree then directed the sheriff of Walla Walla county to forthwith serve upon R. H. and Delphine Golden the writ of restitution theretofore issued in the action, and to execute the writ. Apparently, this provision of the decree was suspended by supersedeas bonds filed by Golden. The decree then quieted Dr. and Mrs. Mount's title to the land as against the Goldens, and awarded judgment in favor of Golden and against Mount for certain sums, concerning which awards Mount assigns no error.

In their amended complaint in cause 34068, Dr. and Mrs. Mount asked for judgment as follows:

"1. For restitution of said premises; for the sum of $3,000.00 for each month since September 20, 1947, the defendants have or may continue in unlawful possession of said property; and that the amount of such damages and rent found due be doubled; also the sum of, to-wit, $2,000.00 as damages and expense incurred and to be incurred by plaintiffs in obtaining possession of said lands and premises.

"2.   For their costs and disbursements herein to be taxed in accordance with law, including statutory attorneys' fees.

"3.   For such other and further relief as to the Court may seem just and proper."

The essential portion of their notice of cross-appeal reads as follows:   They cross-appeal

"   .   .   .   from those parts of that certain Judgment and Decree made March 6, 1948, and entered herein by the Court on March 8, 1948, reading as follows:

"  '2.   That the plaintiff, H. A. Mount and Olive L. Mount, his wife, have judgment against the defendants, R. H. Golden and Delphine Golden, his wife, and the marital community so composed, in the sum of FIVE HUNDRED TWENTY-SIX & 64/100 DOLLARS ($526.64) for double rental and damages due to unlawful occupancy of their said premises and real estate by the defendants, R. H. Golden and Delphine Golden, his wife, from September 1, 1947 to March 1, 1948, and for the additional sum of ONE HUNDRED DOLLARS ($100.00) per month double rent for each month the said Defendants shall continue to occupy said premises and real estate, or any portion of the same, subsequent to March 1, 1948.' and from that portion of the Judgment and Decree reading as follows:

"  '9.   R. H. Golden and Delphine Golden, his wife, are granted Judgment against the plaintiffs, H. A. Mount and Olive L. Mount, his wife, and the marital community so composed, in the sum of $9955.30 for cultivating, furnishing and treating seed for, and seeding, to-wit; 1184 acres of said premises and real estate.'
and that these Cross Appellants hereby approve and confirm said Judgment and Decree and each and every portion thereof, except as to those portions herein appealed from."

It appears from the statement of facts that counsel for Mount, in his opening statement, expressed himself in part as follows:

"We will expect a dismissal of the Golden action and the dismissal of the cross-complaint in the restitution action. We are entitled to the reasonable rental value, exclusive of the grain.   We are entitled to the entire grain crop that remains.   A rental value from $100.00 to $250.00 a month, aside from the grain produced.   We will offer evidence to sustain that theory."

Counsel continued by stating that Mount was entitled to restitution of the premises and double the reasonable rental value until possession should be restored, and for costs and attorneys' fees.

In view of counsel's statement above quoted, and of the fact that, without objection, evidence was received along the line suggested, Mount's complaint would be considered as having been amended to any extent sufficient to justify the admission of the evidence as to the rental value of the farm without consideration of any crop.

We here repeat Mount's assignments of error in connection with the cross-appeal in cause 34068:

"1. The court erred in failing to award unto respondents the entire crop, whether severed or unsevered, without offset except for agreed allowances for summer fallow work performed prior to September 20, 1947.

"2. The court erred in granting judgment in favor of appellants for cost of seed, treating seed and labor performed subsequent to September 20, 1947."

The trial court, in its memorandum decision, found that fifty dollars per month was a reasonable rental for the farm. In the later discussion between the court and counsel, this portion of the memorandum decision was not referred to, either by counsel or by the court.

In its memorandum decision, the trial court stated that Golden had seeded the 1948 crops after the expiration of his lease, and while he was in possession of the property by virtue of the temporary restraining order. The memorandum continues by stating that the "seed has not matured and is a part of the real estate. As the Mounts own and are entitled to the possession of the land they are entitled to the 1948 crop."

The opinion continues by stating that Mount should pay Golden the reasonable cost of seeding the 1948 crop and subsequent care in the total amount of $9,927. In the decree, which the court signed, this amount was fixed at $9,955.30.

In their opening brief, appellants Golden, under the heading "statement of questions involved," state two proposi-

tions only, both presenting the question of whether or not the trial court erred in ruling that the evidence did not support appellants' contention that they were entitled to hold the farm lands for an additional two years after the expiration of the written lease.

Golden's assignments of error are above set forth. Assignments six, seven, and eight, refer to the decree entered in cause 34068. The first two of these assignments present Golden's contention that the trial court erred in adjudging that appellants Golden were guilty of unlawful detention of the farm lands, and that the court erred in directing the sheriff to serve and execute a writ of restitution. The last assignment of error is based upon entry of the decree in cause 34068 and "in denying the defendants in said cause 34068 the full relief to which they were entitled." We have frequently called attention to the fact that, in assignments of error, each error relied upon shall be clearly pointed out. The decree comprised several awards, and appellant Golden's last assignment of error fails to call attention to any particular portion of the decree which appellant contends is erroneous.

In cause 34068, cross-appellants Mount assign no error upon that portion of the judgment from which they cross-appealed awarding Mount judgment for rent for the period subsequent to the expiration of the written lease.

The decree in cause 34068 adjudged that Mount was entitled to the immediate possession of the farm and directed the sheriff to execute the judgment by serving and accomplishing the writ of restitution. The decree then vested title in Mount to any crops seeded or growing on the lands at the date of the entry of the decree. The fact that Golden, by filing bonds in the amount fixed by the court, may have continued to hold possession of the farm lands after the entry of the decree, only incidentally concerns matters presented on these appeals, which are based upon the decrees entered March 8, 1948.

Upon the evidence, the trial court properly decreed that Mount was entitled to the possession of the lands covered by the lease to Golden on and after September 21,

1947. This being true, Mount was entitled to the land and any crops seeded or growing thereon at the date above referred to. 2 Tiffany, Real Property (3d ed.) 547, § 601; 1 Thompson on Real Property (Perm. ed) 207, § 145; 25 C.J.S. Crops 8, § 8; 51 C.J.S. 1035, Landlord and Tenant, § 348; 15 Am. Jur. 215, § 23; 39 A.L.R. 953; *Fuglede v. Wenatchee Dist. Co-op. Ass'n,* 134 Wash. 350, 235 Pac. 790, 39 A.L.R. 953; *Short v. Short,* 180 Wash. 514, 40 P. (2d) 752; *Desimone v. Mutual Materials Co.,* 20 Wn. (2d) 434, 147 P. (2d) 945.

Cross-appellants Mount contend that the trial court erred in refusing to award to them the entire crop seeded or growing upon the land, without allowance for cost of seed, treating seed and labor performed subsequent to September 20, 1947. The trial court granted Golden judgment on this account in the sum of $9,955.30. Opposing this allowance, Mount cites the cases of *Mehl v. Norton,* 201 Minn. 203, 275 N.W. 843, 113 A.L.R. 1055; and *Pfuhl v. Sabrowsky,* 211 Minn. 439, 1 N.W. (2d) 421. Similar questions were considered by this court in *Short v. Short, supra,* and *Plaza Farmers' Union Etc. Co., v. Tomlinson,* 183 Wash. 617, 49 P. (2d) 36, 101 A.L.R. 417. From the annotation in 113 A.L.R. 1059, *supra,* it appears that the authorities are divided as to the respective rights of the lessor and the lessee in such a situation as we are now considering.

On this phase of the case at bar, we are confronted with a rather unusual situation. By the decrees entered March 8, 1948, the rights of the parties, as of that date, were definitely fixed. By the decrees, the trial court adjudicated two equitable proceedings, determining, *inter alia,* that Golden's possession of the farm lands after September 21, 1947, had been without right and was wrongful. That portion of the decree should be affirmed.

The award to Golden of the amount above referred to, for expenses and labor in connection with seeding and caring for the land on and after September 21, 1947, could be based only upon equitable principles. Had Golden, upon entry of the decrees, complied therewith by surrendering possession of the farm lands to Mount, or had the sheriff executed the writ of restitution and placed Mount in pos-

session of the property, the award of judgment in Golden's favor, in connection with the matter under discussion, would have been squarely before us for determination.

█ The trial court, of course, acted upon the assumption that the decrees as signed would, in all respects, become immediately effective. This result, however, did not follow. Golden did not surrender possession of the lands but, by perfectly lawful means, as disclosed by the record before us, after appealing from the decree entered in cause 34074, which decree also directed the sheriff to serve and execute the writ of restitution issued September 24, 1947, in cause 34068, suspended the execution of the decree by filing appropriate supersedeas bonds in accordance with orders of the court, entered subsequent to the signing of the decrees, which orders are contained in the transcript now before us. In this connection, it may be noted that counsel for Golden, in their brief filed on his behalf, state that Golden was, at that time, still in possession of the farm lands. Golden, then, has maintained his possession of the farm, and, of course, crops planted in 1947 have, by this date, been harvested. Golden did not, himself, accomplish the equity decreed by the trial court but, while being perfectly within his legal rights, has brought the decree before this court for review, all the time remaining in possession of the lands.

The recovery allowed Golden, in the particular instance last above referred to, was awarded by the court in the exercise of equitable jurisdiction. The court decreed that Mount, as of the date of the decrees, March 8, 1948, was entitled to the immediate possession of the lands, but that portion of the decree has never been executed. The award then, in Golden's favor, for the value of seed, labor, etc., which we are now considering, should be reversed, without prejudice, so that, when the rights of the parties are finally settled by agreement between themselves or through further judicial proceedings, the then existing controversy between the parties may be fully determined upon equitable or legal principles as may be deemed appropriate.

Paragraph seven of the decree in cause 34068, which awards Golden judgment against Mount for $3,895.75 for summer-fallowing the land pursuant to the terms of the lease, rests upon a different basis from the award in favor of Golden for cultivating and seeding. The summer-fallowing had been accomplished prior to the expiration of the term of the lease, and, after decreeing that the lease had terminated and that Mount became entitled to possession of the farm September 21, 1947, Golden, pursuant to the express terms of the lease, was entitled to be paid for the fallowing which he had accomplished prior to that date. No error is assigned upon this portion of the decree.

The decree in cause 34074, R. H. Golden v. H. A. Mount and Olive L. Mount, is affirmed. In cause 34068, H. A. Mount and Olive L. Mount, his wife, plaintiffs, v. R. H. Golden and Delphine Golden, his wife, defendants, the decree is affirmed, with the following exceptions: That portion of the decree contained in paragraph nine thereof, whereby R. H. Golden and Delphine Golden, his wife, were granted judgment against H. A. Mount and Olive L. Mount, his wife, for the sum of $9,955.30, for "cultivating, furnishing and treating seed for and seeding" 1,184 acres of the farm lands, is reversed, without prejudice, and will be stricken from the decree.

Paragraph ten of the judgment will be modified by striking therefrom the last portion thereof, reading as follows:

". . . and the judgment herein in favor of R. H. Golden and Delphine Golden, his wife, shall be satisfied pro tanto upon the depositing of said sum in the registry of the Court by the plaintiffs, H. A. Mount and Olive L. Mount, his wife, as herein directed."

Costs in this court will be taxed in favor of respondents Mount.

STEINERT, SIMPSON, MALLERY, and HILL, JJ., concur.